## BLUMENTHAL *v.* BRIDGES.

## Opinion delivered June 28, 1909.

1. REAL ESTATE BROKER—RESERVED AUTHORITY OF PRINCIPAL TO SELL.—
Where real estate is placed in the hands of an agent or broker for
sale in the ordinary way, without stipulation, express or implied, that
the agent should have the exclusive right to sell, the principal is not
deprived of the right in good faith to make sale himself, free from
liability to the agent for his commission. (Page 214.)

2. SAME—WHEN AGENT'S AUTHORITY EXCLUSIVE.—Under a contract of
employment of a real estate broker which stipulates that for a definite
period of time the broker shall have the right to make sale of certain
land, there is implied an exclusive right to sell within the time
named, without the right in the principal to revoke the agency, either
directly or by making a sale of the property, unless there is a reser-
vation to that effect. (Page 214.)

3. SAME—BREACH OF CONTRACT OF EMPLOYMENT—DAMAGES.—Where an
agent's contract of employment to sell his principal's land is wrong-
fully revoked by the principal, and the agent elects to sue for the
probable damages resulting therefrom, the measure of his damages is
the profit which he would have realized from the performance of the
contract if he had been permitted to perform it within the time named.
(Page 217.)

4. SAME—RIGHT TO COMPENSATION.—If a real estate broker, before his
contract of employment is revoked, produces a purchaser, he is en-
titled to the earned compensation, whether the right of revocation
existed or not. (Page 217.)

5. SAME—RIGHT TO COMPENSATION.—Upon an unlawful revocation of a
real estate broker's contract of employment before its expiration he
is entitled to recover if he proves by competent evidence that he
could, within the remaining time of the contract, have sold the land
at a price which would have entitled him to a commission. (Page 217.)

Appeal from Jefferson Circuit Court; *Antonio B. Grace,*
Judge; affirmed.

*White & Altheimer* and *W. B. Alexander,* for appellants.

1. No exclusive right to sell was given, and appellants re-
served the right to make sale themselves. 44 L. R. A., p. 344,
note A; 70 Ark. 58; 44 *Id.* 275; 21 Wis. 303; 20 Minn. 126;
*Cordova* v. *Baker,* 74 Tex. A principal reserves the right of
disposal, even after conferring the power upon an agent, unless
the *exclusive* authority to sell is given.

2. Appellants could only be liable for *breach of contract* in such damages as were proved. No proof was made as to the reasonable value of plaintiff's services. 70 Ark. 58; 89 Ark. 412; Mechem on Agency, § 2091.

*Taylor & Jones,* for appellee.

There is no ground of reversal in this case. It is really settled by 89 Ark. 412. By terminating the contract appellants became liable for the damages sustained, *i. e.,* all over $2 per acre, or $160. *Ib.*

McCULLOCH, C. J. This is an action, instituted by appellee Bridges against appellants, to recover a commission to which he is alleged to be entitled under a contract for the sale of land. The contract is as follows:

"June 24, 1907.

"We authorize R. E. Bridges to sell for us the tract of land in Cleveland County known as the Hense Gibson place for $2 per acre. Whatever he realizes over $2 per acre belongs to him. This list is good until January 1, 1908.

(Signed)   "S. Blumenthal & Co."

The appellants sold the land to one Quinn on October 28, 1907, for the sum of $300, without the knowledge, assistance or procurement of appellee, and executed to Quinn a deed of conveyance, which was duly placed on record. In December, 1907, appellee tendered to appellants the sum of $320, and demanded of them that they convey the land to one Gibson, to whom he claimed he had sold the land. Appellee knew at that time that appellants had previously sold the land to Quinn.

Appellee testified that in the latter part of June, after the date of the contract with appellants, he sold the land to Gibson for $3 per acre, and in August, 1907, notified the appellants that he had found a purchaser for the land, but did not inform them who the purchaser was. S. Blumenthal, one of the appellants, testified in the case, and denied that appellee ever told him that he had found a purchaser, but on the contrary told him that he could not sell the land.

The court refused to instruct the jury at appellants' request to the effect that by the execution of the contract in question they did not waive the right to sell the land in question; that the sale

made by them to Quinn operated as a revocation of the contract, and that they had a right to revoke it. The court submitted the case to the jury on the following instruction:

"If you believe from the evidence that the plaintiff at any time between the 24th day of June, 1907, and the first day of January, 1908, in good faith made a verbal agreement with one Hense Gibson for the sale of the land in controversy to him for the sum of three dollars per acre, and that before the first day of January, 1908, plaintiff for the said Hense Gibson tendered to the defendants in money the sum of $320, and demanded of them a deed for the said land to the said Gibson, and that the defendants refused to execute the same, then you will find for the plaintiff in the sum of $160 with interest thereon at the rate of 6 per cent. to the present time from the first day of January, 1908." The jury returned a verdict in favor of appellee for the sum of $160, judgment was rendered accordingly, and appeal was taken to this court.

Appellants contend that the contract was not one for exclusive agency, and that they had the right at any time before a sale was negotiated by appellee to revoke it. They rely upon numerous cases which announce the general rule that where real estate is placed in the hands of an agent or broker for sale in the ordinary way, without a stipulation to the contrary and without specifying any definite period of time within which the agent is to have the exclusive right to sell, this does not deprive the principal of the right to sell the land himself when he acts in good faith toward the agent, and that in such cases there is an implied reservation of the right of the principal to sell, free from any charge or liability for commission. See note to *Hoadley* v. *Savings Bank of Danbury* (Conn.), 44 L. R. A. 321; 23 Am. & Eng. Enc. L., 913. The same rule was announced by this court in *Hill* v. *Jebb*, 55 Ark. 574.

Those cases do not, however, announce the controlling principle in this case, for here the contract expressly stipulated for a definite period of time within which the agent might make a sale. In such case the contract implies an exclusive right to sell within the time named, without the right of the principal to revoke the agency unless there is a reservation to the contrary. *Levy* v. *Rothe*, 39 N. Y. Supp. 1057; *Glover* v. *Henderson*, 120 Mo. 367;

*Green* v. *Cole,* 127 Mo. 587. That principle was distinctly recognized by this court in *Novakovich* v. *Union Trust Co.,* 89 Ark. 412. The court in that case quoted with approval the following statement of the law, taken from Mechem on Agency, § 210:

"Where no express or implied agreement exists that the agent shall be retained for a definite time, the power and the right of revocation coincide. Such employments are deemed to be at will merely, and may therefore be terminated at any time by either party without violating contract obligations or incurring liability. The law presumes that all general employments are thus at will merely, and the burden of proving an employment for a definite period rests upon him who alleges it. * * But where the agent has been employed for a fixed period, the agency can not be rightfully terminated before the expiration of that period at the mere will of the principal, but only in accordance with some express or implied condition of its continuance. Any other termination of such an agency by the act of the principal will subject him to liability to the agent for the damages he has sustained thereby."

The same author at another place (§ 618) says: "When the agent is employed for a definite term, he can be discharged without liability only when there has been a breach of some express or implied condition of the contract creating the agency."

Now, if the principal cannot, under a contract of this kind, stipulating a definite time within which the sale may be made, revoke the agency directly, it follows that he cannot do so indirectly by making the sale of the property himself, thereby putting it beyond the power of the agent to perform the contract. The revocation of the agency, either directly or by making a sale of the property, is a breach of the contract on the part of the principal, and renders him liable to the agent for damages which the latter sustains thereby. The court in the Novakovich case places a contract of this kind on the same ground as any other contract for employment of an agent to perform a stipulated service, and the same measure of damages must necessarily be applied, so far as the nature of the case makes it applicable. This court in *Van Winkle* v. *Satterfield,* 58 Ark. 621, laid down the following rule, which is sustained by the text writers and by

the adjudged cases, as to the measure of damages which a servant, wrongfully discharged, may recover from his employer:

"First, he may consider the contract as rescinded, and recover on a *quantum meruit* what his services were worth, deducting what he had received for the time during which he had worked. Second, he may wait until the end of the term, and then sue for the whole amount, less any sum which the defendant may have a right to recoup. Third, he may sue at once for breach of the contract of employment."

This rule was subsequently approved in *Spencer Medicine Co.* v. *Hall,* 78 Ark. 336, where it was held that a discharged agent, who had been employed to sell patent medicines, could recover anticipated profits which he could have realized during the pendency of the contract if he had been permitted to perform it. It was also held in the last-named case that where the character of the service stipulated for in the contract did not involve the whole time of the agent during the period named, nor interfere with his carrying on other work, no deduction should be made for the value of the time saved.

The appellee in this case elected not to treat the contract as rescinded and sue to recover on a *quantum meruit* what the services already performed were worth, but he sued to recover the profits which he would have earned upon the sale if he had been allowed to perform the contract within the stipulated time. The question of recovery of anticipated profits gave the court much concern in *Spencer Medicine Co.* v. *Hall, supra,* and the court held that the same could be recovered. We see no reason why, if anticipated profits on a sale of merchandise could be recovered as damages on a broken contract, such profits cannot be recovered on a broken contract for the sale of land. The same principle controls in both kinds of contracts.

Other courts have held that this is the measure of damages for breach of contracts for sales of land similar to the one in this case. *Van Gorder* v. *Sherman,* 81 Iowa 403; *Schultz* v. *Griffin,* 26 N. Y. Supp. 713; *Levy* v. *Rothe, supra; Green* v. *Cole, supra.*

In *Rowan* v. *Hull* (W. Va.) 47 S. E. 92, the following rule was announced, taken from Rinehardt on Agency, § 269; "Where the parties had provided by their agreement what the agent's compensation shall be in case the principal sees fit to

revoke the contract prematurely, such agreement shall form the basis of the agent's recovery." This is the rule which prevailed in *Novakovitch* v. *Union Trust Co., supra.*

In the present case, however, the contract does not stipulate expressly for a measure of the agent's compensation in case the contract should be broken. It only provides for what the compensation shall be when the contract is performed. Therefore, where the agent elects not to treat the contract as rescinded as soon as it is broken and sue for the value of his services, but elects to sue for the probable damages resulting from the breach, the only measure of his damages is the profit he would have realized from the performance of the contract if he had been permitted to perform it within the time named. The court submitted the case to the jury on this measure of damages, and there was evidence sufficient to sustain the verdict.

The instruction given by the court was not strictly accurate, in that it told the jury that appellee, before he could recover, must show that he found a purchaser and tendered to the appellants the price. But this inaccuracy was not prejudicial to appellant, for it imposed an additional burden on appellee which it was not necessary for him to sustain in order to entitle him to a recovery. If, before the revocation of the contract, he produced a purchaser, ready, willing and able to purchase the property, then he was entitled to the earned compensation, whether the right of revocation existed or not. And, even if he had not produced a purchaser before the revocation, he would have been entitled to recover by proving by competent testimony that he could, within the remaining time of the contract, have sold the land at an advance over the price named in the contract. This he might have shown by proving that the lands were of sufficient value in the market, and that his opportunities for finding a purchaser were such that he could have found a purchaser at an advanced price if he had been permitted to do so.

We conclude upon the whole that the case was fairly tried. and that the verdict should not be disturbed.

Affirmed.