HARRIS & WHITE *v*. STONE.

Opinion delivered December 23, 1918.

1. BROKERS—CONTRACT OF EMPLOYMENT—CONSTRUCTION.—A contract of employment of real estate brokers which contained no time limit within which the broker was to make sale did not deprive the owner of the right to make sale without liability for commission, provided he acted in good faith.

2. BROKERS—CONSTRUCTION OF CONTRACT—"EXCLUSIVE AGENTS."—A contract of employment of real estate brokers which mentions them as "exclusive agents," but contained no time limit, merely prohibited the placing of the property in the hands of another broker, but did not deprive such owner of the right to make sales without liability for commission, provided he acted in good faith.

3. APPEAL AND ERROR—HARMLESS ERROR.—The admission of parol evidence to explain the meaning of a written contract was not prejudicial where it merely gave such words their legal meaning.

4. TRIAL—INSTRUCTIONS—REQUESTS.—In a real estate broker's action for commission where the only conflict of evidence was on the question whether the broker procured a purchaser, the court's charge was not defective in failing to submit the question whether in making the sale the owner acted in good faith if no specific instruction submitting such issue was requested.

Appeal from Washington Circuit Court; *J. S. Maples*, Judge; affirmed.

STATEMENT OF FACTS.

This is an action for commissions for procuring a purchaser for real estate. The plaintiffs are John R.

Harris and N. H. White, composing the firm of Harris & White, real estate agents, and the defendant is W. C. Stone, who owned a farm near Fayetteville, Arkansas. The firm of Harris & White had had the farm of W. C. Stone for sale for several months and then the parties entered into the following contract:

"Fayetteville, Ark., Oct. 6, 1916.

"Will Stone land south of town 4 miles.

"In this tract there is 167 acres, 120 in cultivation, and all can be cultivated, all the land is good farming land and free from stones and hills, has a 4-room log house in good condition, two new barns, one 30x40, and 20x22, has a fine well of water near house, three wells on farm, four miles from Fayetteville, and one and a quarter miles from Greenland on Frisco R. R. This farm is all fenced with wire. All bottom land. Price, $11,000.

"There is 75 acres that joins this land that can be bought. Harris & White, exclusive agents.

"W. C. STONE."

On the 7th day of October, 1916, Gustave Selle moved to Fayetteville, Arkansas, and on the 10th day of February, 1917, purchased from W. C. Stone, for $9,250, the farm which is described in the contract copied above.

According to the testimony of the plaintiffs they approached Selle and told him they had the agency for the selling of Stone's farm and wished to take him out and show the farm to him. Selle replied that he had an automobile and that he and his wife would go out soon and look over the farm. A short time after this he reported to Harris & White that he had looked over the farm and wanted to know what the purchase price was. They tried to sell it to him for $10,000 and he refused to pay that price. They reported the matter to Stone and he refused to lower the price of his land. The matter went along this way for some time with the plaintiffs consulting with the defendant about it until the 10th of February, 1917, when the defendant himself sold the land to Selle.

According to the testimony of both Stone and Selle, the plaintiffs did not have anything to do with selling the

land or procuring Selle to purchase it. Selle was introduced by another real estate agent to Lottie Stone, a brother of W. C. Stone. Lottie Stone introduced Selle to W. C. Stone and they entered into negotiations which finally resulted in the sale of the land. Both of them testified that the plaintiffs did not have anything whatever to do with introducing Selle to Stone or procuring the former to purchase the land from the latter.

Stone testified that when the contract of agency was prepared that he reserved the right to sell the land himself and that the words "Harris & White, exclusive agents" were placed there at the suggestion of Harris & White in order to impress a prospective customer who was present at the time; but that they had a verbal understanding that Stone reserved the right to sell the land himself.

On the other hand Harris and White both testified that the words "Harris & White, exclusive agents" were added to the contract in pencil by Stone himself for the purpose of giving them the exclusive agency for the sale of the land.

The jury returned a verdict for the defendant and the plaintiffs have appealed.

*Geo. A. Hurst,* for appellant.

1. The court erred in its instructions to the jury. Defendants gave plaintiffs the exclusive sale of the lands. The instructions were improper, abstract and misleading, wholly unwarranted by the evidence. 22 La. 270; 25 *Id.* 572; 46 Ia. 399; 32 Mo. 498; 4 S. W. 300; 43 Tex. 402; 16 App. Tex. 20 Cent. L. J. 123; 17 Mo. 332; 84 Ark. 67; 95 *Id.* 597; Nash. Pl. & Pr. 978; 11 Enc. Pl. & Pr. 252; Thompson on Trials, § 1106; 3 Hawk. (N. C.) 390.

2. Defendant testified that he never did revoke the contract. 91 Ark. 212; 96 *Id.* 23; 89 *Id.* 412; 9 C. J. 622, par. 101. The verdict is contrary to the law and the evidence.

3. The law is well settled. 9 C. J. 620 note a; 44 L. R. A. 350 note j; 9 C. J. 616 note 9 a; 89 Ark. 412; 91 *Id.*

212; 96 *Id.* 23.   Here the broker was the procuring cause of the sale and entitled to the commission.   91 Ark. 212. There was no time limit fixed.   89 Cal. 251; 2 Wash. 34; 53 Ark. 49; 23 Fla. 203; 76 Cal. 60; 4 A. & E. Enc. L. 979 (b) 981.

4.   The broker was clearly entitled to the commission.   76 Ark. 375; 84 *Id.* 468; 89 *Id.* 195; 102 *Id.* 203; 96 *Id.* 23; 88 *Id.* 373; 89 *Id.* 195; 124 *Id.* 512; 117 *Id.* 593; 110 *Id.* 140.   Our Arkansas cases settle this case.   See also 4 R. C. L. 322; 44 *Id.* 328, 350 and note j; 19 Cyc. 262, par. 8; 124 Ark. 512; 44 L. R. A. 321-8; 19 Cyc. 263 note.

5.   The verdict is *not* supported by *any* evidence.

*J. V. Walker,* for appellee.

1.   It is conceded that a real estate broker having property listed for sale, who is the *procuring cause* of the sale, is entitled to his commission, whether he makes the sale himself or the sale is made by another to a purchaser who has been brought to the attention of the seller.   In this case, out of sharply conflicting testimony, the jury found that appellants were not the procuring cause of the sale.   This court will not set aside their verdict, since there is competent testimony on which to base it.

2.   There is no error in the instructions.   Appellee explained why the words "Harris & White, exclusive agents" were appended to the instrument, but he testified also that he reserved the right to sell the property himself, and this testimony was admissible.   55 Ark. 112; *Id.* 574.

3.   Before an exclusive agent is entitled to commission on a sale made by the principal, the right of the principal to sell must have been expressly excluded by the terms of the agreement.   Walker, Law of Real Estate Agency, § 13 and cases cited.

Where the broker is given exclusive agency, but not inhibiting the principal from selling, a sale by the principal to a purchaser who is not a customer of the broker, is not a violation of the contract.   *Id.;* 117 S. W. 996; 82 Cal.

659; 125 Ia. 82; 116 S. W. 875; 41 Minn 535; 61 N. Y. 415; 55 Cal. 606.

4. A contract of agency will not be construed to be exclusive unless established expressly, or by clear implication. Walker, Law of Real Estate Agency, § 13 and cases cited. See also 225 Pa. 359; 41 Minn. 539.

HART, J., (after stating the facts). It is earnestly insisted by counsel for the plaintiffs that the court erred in giving instruction number 8, which is as follows: "I charge you that the written contract introduced in evidence by the plaintiffs does not deprive the owner of the right to sell the lands himself without being liable to the plaintiffs for a commission unless the plaintiffs show by a preponderance of the evidence that they were the procuring cause of the sale."

The court did not err in giving this instruction. The instruction is in accordance with the principles of law laid down in *Blumenthal* v. *Bridges,* 91 Ark. 212. There in discussing the principles of law applicable to cases of this sort the court said: "Appellants contend that the contract was not one for exclusive agency, and that they had the right at any time before a sale was negotiated by appellee to revoke it. They rely upon numerous cases which announce the general rule that where real estate is placed in the hands of an agent or broker for sale in the ordinary way, without a stipulation to the contrary and without specifying any definite period of time within which the agent is to have the exclusive right to sell, this does not deprive the principal of the right to sell the land himself when he acts in good faith toward the agent, and that in such cases there is an implied reservation of the right of the principal to sell, free from any charge or liability for commission. See note to *Hoadley* v. *Savings Bank of Danbury* (Conn.), 44 L. R. A. 321, 23 Am. & Eng. Enc. L. 913. The same rule was announced by this court in *Hill* v. *Jebb,* 55 Ark. 574. Those cases do not, however, announce the controlling principle in this case, for here the contract expressly stipulated for a definite period of

time within which the agent might make a sale. In such case the contract implies an exclusive right to sell within the time named, without the right of the principal to revoke the agency unless there is a reservation to the contrary.''

In the present case the contract did not contain a time limit within which the agents might make a sale of the property and there was an implied reservation of the right of the owner to sell the land himself free from any liability for commissions, provided he acted in good faith towards his agent. The contract, not specifying any exact period of time within which the agent was to have the exclusive right to sell, does not deprive the principal of the right to sell the land himself when he acts in good faith towards his agent. The words, ''Harris & White, exclusive agents'' under the circumstances, merely prohibited the placing of the property for sale in the hands of any other agent, but not the sale of the property by the owner himself.

It is also insisted by counsel for the plaintiffs that the court erred in allowing parol evidence to be introduced as to the meaning of the words, ''Harris & White, exclusive agents.'' This may be conceded and still does not work to the prejudice of plaintiffs. As we have just seen under the contract above recited, the right of Stone himself to sell the property thereby terminates the agency without any liability to the plaintiffs is unquestioned. Hence the testimony introduced by the defendant as to the meaning of the contract amounted to no more than to give it its legal meaning and therefore could not injure the plaintiffs. On the other hand the plaintiffs were benefited by being permitted to introduce testimony tending to show that the contract did not have that meaning. The evidence introduced by the plaintiffs and by the defendant on the question of whether or not the plaintiffs were the procuring cause of the sale by the defendant to Selle was indirect and irreconcilable conflict. The respective theories of both parties to this lawsuit on this question were

correctly submitted to the jury in instructions numbered 6 and 7, which are as follows:

"No. 6. If you find from a preponderance of the evidence that the plaintiffs were the procuring cause of the sale of defendant's farm, then you will find for the plaintiffs such sum as you may feel warranted from the evidence before you, although you may find that the defendant finally consummated the deal in person."

"No. 7. If you find that the plaintiffs were not the procuring cause of this sale being made and find that the defendant reserved the right to sell his farm, and you further find that the defendant, with the help of friends, not real estate brokers, did sell his farm, then you will find for the defendant."

The instructions do not submit to the jury the question of good faith toward the plaintiffs of Stone himself in making the sale. In the first place it may be said that no evidence was introduced even tending to impeach the good faith of Stone in himself making the sale. The conflict in the testimony was as to whether or not the plaintiffs tendered Selle as a purchaser to Stone. The instructions plainly told the jury that if such was the case, the plaintiffs were entitled to recover commissions, and on the other hand if the plaintiffs were not the procuring cause of the sale, they were not entitled to commissions. In the second place if plaintiffs desired to have submitted to the jury the question of the good faith of the defendant in making the sale and thus terminating the agency, they should have asked a specific instruction upon this point. It will be remembered that the contract of agency was executed on October 6, 1916, and that the sale was not made by Stone until the 10th day of February, 1917, and no contention was made by the plaintiffs at the trial that a reasonable time had not elapsed for them to make the sale. As above stated, the only material conflict in the testimony was as to whether or not they had introduced Selle to the plaintiffs as a prospective purchaser of the lands. We find no prejudicial error in the record and the judgment will be affirmed.