GIBSON *v.* GREENE.

Opinion delivered October 3, 1927.

1. BROKERS—SPECIFIC PERFORMANCE OF AGENT'S CONTRACT.—One who contracted to buy land through the vendor's broker, *held* not entitled to specific performance where the mortgagee of the seller refused to release his mortgage as to him, so that a clear title could be conveyed, and where the agent's authority to sell had been revoked.

2. BROKERS—VERBAL REVOCATION OF AUTHORITY.—That a vendor appointed an agent to sell the land by written contract of agency did not preclude verbal revocation of authority to sell, though the contract provided for exclusive authority for three months and thereafter until revoked in writing, as the law does not compel one to continue an agency which he desires to terminate, but it does provide a remedy for an agent whose agency has been wrongfully terminated.

Appeal from Lawrence Chancery Court, Eastern District; *Lyman F. Reeder,* Chancellor; affirmed.

*G. M. Gibson*, for appellant.

*Cunningham & Cunningham* and *H. L. Ponder,* for appellee.

McHANEY, J.   On the 20th day of March, 1926, appellee, Rheamona Surridge Greene, entered into a contract of agency with one F. M. Messer for the sale of certain real estate located in the city of Walnut Ridge, which is as follows, to-wit:

"I have this day placed with F. M. Messer for sale the property described on the reverse side of this card, of which I am the owner.   The said Messer shall have the exclusive agency for the sale of the property for a term of three months from date hereof, and thereafter until notified by me in writing of the withdrawal from sale, and I authorize the said Messer to sell and convey and contract with the purchaser for the sale and conveyance by warranty deed of said property, according to the price and terms herein specified, or any price or terms I may hereafter authorize the said Messer, in writing or verbally, to accept.   In case of sale, abstract of title to be furnished by me, and warranty deed with proper relinquishment of dower, properly acknowledged, to be delivered on receipt of purchase price.   Price $5,500 net, $.................... gross.   If the property be sold or in any manner disposed of during period above stated, no matter by whom or in what manner, or after the above period, on information obtained through the said Messer, I agree to pay a commission of 3 per cent.

"Hoxie, Ark., 20th day of March, 1926.   Signature: Rheamona Surridge Greene.   Client's address, Walnut Ridge, Ark."

On the reverse side appears the following:

"Section.................township 17-1-E., range 8, lots btwn. Pine and Vine Streets, block............, between E. Front and E. Second Str. Addition, town of Walnut Ridge.   Possession immediately. ........................Date."

Thereafter, on April 20, 1926, Messer secured a purchaser in the person of appellant, John K. Gibson, for this property for a consideration of $5,000, of which

$2,000 was to be cash, $1,000 due the next fall, with eight per cent. interest, and the assumption of a $2,000 note to Barnett Brothers of Batesville, and a contract was prepared by Gibson's attorney, on memoranda furnished by H. L. Ponder, attorney for Mrs. Greene, in his own handwriting, and in this contract Josephine R. Gibson, the wife of appellant, was named as the purchaser.

It is admitted by all of the parties that Frank Pace of Little Rock held a mortgage on this and other property of the appellee, Mrs. Greene, to secure a large sum of money due him on a promissory note, and that, before Mrs. Greene could convey a good title to the property, it would be necessary for Mr. Pace to release this property from his mortgage. Appellant contends that he was advised by both Messer and Ponder that Pace would release this property from his mortgage to any one who would purchase it, and appellee contends that the matter would have to be taken up with Pace in order to get a release of this property from the mortgage. The contract so prepared was presented to Ponder and Mrs. Greene, and both Mrs. Greene and Ponder came to Little Rock, presented the contract to Pace, and he declined to release this property from the mortgage in Gibson's favor, but agreed, if it were sold to appellee, Z. M. McCarroll, he would release. Mrs. Greene returned from Little Rock on the evening of April 22, and, when she got off the train, she saw Messer and talked to him about the matter of the sale, and, she says, told him that she could not make the contract, for the reason that Pace would not release the mortgage, and told him to do nothing further about the matter; that he should make no further arrangements regarding the sale of the property. This was denied by Messer. Ponder went from Little Rock to Fayetteville, and returned to Walnut Ridge the following Sunday, which was April 25, and Messer talked to him over the telephone, making an engagement to see him at his office the next morning, April 26, and, according to Ponder, Messer came to see him the next morning, and he told Messer that it was not satisfactory with Pace for Mrs. Greene to make the sale to Gibson, and that

he would not release his mortgage, and told him to let the matter drop where it was, consider the matter out of his hands, and not to do anything further with it; that, so far as Messer was concerned, the matter was closed; that they would pay him his commission for making the sale, but that he needn't do anything further about it. Messer denies having these conversations with Ponder, and thereafter, on the same day, April 26, he, assuming to act under authority of the written contract between him and Mrs. Greene, entered into a contract with appellant, which undertook to bind Mrs. Greene to convey the property to appellant, on the same terms and conditions as the proposed contract of April 20 between her and Mrs. Josephine R. Gibson, and without taking into consideration the necessity of the release of the mortgage thereon held by Pace. A copy of the written contract between Messer, as agent, and appellant was, on the same date, mailed to Mrs. Greene by registered letter, which was delivered on April 27, and this contract was also duly filed and recorded in the recorder's office. On the night of the 27th of April Mrs. Greene executed and delivered a deed to appellee, McCarroll, for the same consideration and upon the same terms as the proposed contract with appellant, with the exception that Pace had agreed to release this property from his mortgage in favor of McCarroll.

Under this state of facts, and others not necessary to discuss, in view of the point hereinafter decided, on which the case hinges, appellant brought suit for specific performance of his contract, on which issue was joined, which resulted in the court's finding that there was no equity in appellant's complaint on which to base a decree of specific performance, dismissed his complaint for want of equity, and canceled the contract entered into between him and Messer on the 26th day of April, from which comes this appeal.

We think the decree of the court is sustained by a fair preponderance of the evidence, both as to the fact that there was a mortgage on this property in favor

of Pace, which would have to be released before Mrs. Greene could make a good deed conveying a clear title thereto, and as to the fact that Messer's authority to act as her agent before the contract of sale to appellant was entered into between Messer and appellant was revoked. Not only was Pace's mortgage of record, which was constructive notice to appellant that she could not convey a good title to the property with that mortgage covering it, but they both had actual knowledge of the existence of such mortgage, as they both claimed that they were assured by both Ponder and appellee, Mrs. Greene, that Pace would release. Nor do we think that the fact that the release of this mortgage was not made a condition of sale in the contract between Messer and Mrs. Greene, and the fact that the memoranda made by Ponder on the 20th of April, on which the contract between Mrs. Greene and Josephine R. Gibson was drawn, omitted the condition relative to Pace's mortgage, are of sufficient weight to overcome their positive testimony that this was, at all times, one of the conditions of sale, that is, that Pace would have to release his mortgage before any sale could be made. The contract between Messer and Mrs. Greene contemplated that the price might have to be reduced. It did not undertake to fix any terms upon which Messer might sell. Necessarily any subsequent changes in the contract would have to be submitted to and approved by her, including price, terms and conditions of sale.

The fact that Pace's mortgage was outstanding, of which all parties were fully cognizant, and would have to be released before she could convey a valid title free from such lien, is a strong circumstance corroborative of Mrs. Greene and Ponder and their statements to the effect that it was understood that Pace's consent to release would have to be obtained. And we do not think that the failure of Ponder to put that condition in the written memoranda on which the Josephine R. Gibson contract was drawn should be of controlling influence or very persuasive that it was not a condition precedent.

As to the other point, that Messer's agency was terminated by Mrs. Greene on the 22d day of April, and reaffirmed by Mr. Ponder on the 26th day of April, prior to the contract between Messer and appellant, we think the decided preponderance of the evidence sustains that contention. Mrs. Greene testifies positively that she told Messer, on the 22d of April, to take no further steps in the matter of the sale of this property, and in this she is corroborated by Morris Less. Ponder testifies positively that he saw Messer in his office early in the morning on the 26th day of April, and advised him that Pace would not release to Gibson, that the whole deal had "blown up," and for him not to take any further action in the matter. In this he is corroborated by George Ponder. Messer alone denies these conversations.

The mere fact that Mrs. Greene had appointed Messer her agent to sell this particular piece of real estate, which contract of agency was in writing, did not preclude her from verbally revoking his authority to sell at any time, even though the contract itself provided that he should have the exclusive authority to sell for three months, and thereafter until revoked in writing. The only interest Messer had in the sale of this real estate was the collection of his commission. The law does not compel one to continue an agency which he desires to terminate, but it does provide a remedy for the agent whose agency has been wrongfully terminated. This court, in the case of *Novakovich* v. *Union Trust Co.,* 89 Ark. 412-415, 117 S. W. 246, said:

"Appellants contend that the contract sued upon conferred on appellee a naked power to sell, uncoupled with an interest in the property, and that it was revocable at any time they might choose to revoke it, and that, when they revoked it before the sale, the Union Trust Company could not recover the agreed commission. It is true that the power vested in the trust company by the contract was not coupled with any interest, as the commission to be earned was not an interest rendering the power irrevocable. But Mechem on Agency, § 209, says: 'Where, then, the authority is not coupled with

an interest, the principal has the power to revoke it at his will at any time. But this power to revoke is not to be confounded with the right to revoke. Much uncertainty has crept into the textbooks and decisions from the failure to discriminate clearly between them. Except in those cases where the authority is coupled with an interest, the law compels no man to employ another against his will. As it has been seen, the relation of an agent to his principal is founded in a greater or less degree in trust and confidence. It is essentially a *personal* relation. If, then, for any reason, the principal determines that he no longer desires or is able to trust and confide in the agent, it is contrary to the policy of the law to undertake to compel him to do so. * * * This, then, is what is meant when it is said that the principal may revoke the authority at any time. But it by no means follows that, though possessing the power, the principal has a right to exercise it without liability, regardless of his contracts in the matter. It is entirely consistent with the existence of the power that the principal may agree that, for a definite period, he will not exercise it, and for the violation of such an agreement the principal is as much liable as for a breach of any other contract. It is in this view, therefore, that the question of the right to revoke the authority arises.''

Whether the fact of the revocation of Messer's agency was brought home to Gibson or not is unimportant here. Let it be remembered that this agency is a special and limited one, limited to the sale of one particular piece of property, and under a contract which contemplated that the owner or some other person might sell the property during the period covered by this contract, and, if exercised, that necessarily would be a revocation of the agency. The last clause in the contract provides: ''If the property be sold or in any manner disposed of during period above stated, no matter by whom or in what manner, or after the above period, * * * I agree to pay a commission of 3 per cent.'' So, while the contract in the first sentence provides that Messer shall have the ''exclusive agency,'' it later provides that the ''exclusive

agency'' shall not be exclusive, in so far as the sale of the property is concerned, except as to his commission of 3 per cent. Therefore appellant was bound to take notice of Messer's authority as set out in the written contract, which provided, in effect, that Mrs. Greene or others might sell this property during the time stipulated, which would be a revocation of his agency, and the liability for the revocation fixed.

The decree of the chancery court is in all things correct, and it is accordingly affirmed.