MANZO *v.* PARK.

4-9712                                   247 S. W. 2d 12

Opinion delivered March 17, 1952.

*Talley & Owen* and *Robert L. Rogers, II,* for appellant.

*Irvin M. Brewer,* for appellee.

ED. F. McFADDIN, Justice. This is a controversy between the broker and the owner as to (1) alleged breach of contract by the owner, and (2) damages claimed by the broker. Appellee, Park (broker), recovered judgment against appellant, Mrs. Manzo (owner), for $1,800; and this appeal resulted.

On January 11, 1950, Mrs. Manzo signed a contract with National Business Brokers (trade name of appellee, Park), authorizing Park, a licensed broker, to sell the West Ninth Street Cab Company (sometimes hereinafter called "the property"), then owned or controlled by Mrs. Manzo. That portion of the contract essential to an understanding of this case, reads:

"By this agreement the undersigned owner hereby appoints National Business Brokers as his or her sole and exclusive agent for 90 days from date hereof to sell, lease or exchange the business or property herein below described at a gross price of $26,500 walkout proposition, or any other sum to which the owner may agree. For which service the owner agrees to pay the National Business Brokers in cash at time of the close of the sale, lease or exchange, a commission of 10% of the gross amount for which said property is sold, leased or exchanged."

Without notice to Park, Mrs. Manzo, in March, 1950, traded the property (*i. c.,* West Ninth Street Cab Company) to Mr. Drago, for an apartment building in Hot Springs.[1] When Park learned that Mrs. Manzo had disposed of the West Ninth Street Cab Company during the time in which he held an exclusive listing, he filed action against her for his contract commission of 10%. Considerable evidence was heard on the value of the Hot Springs apartment building. As aforesaid, the jury awarded Park $1,800. Mrs. Manzo urges several contentions for reversal, but we will discuss only a few of them:

I. *Did Mrs. Manzo Commit A Breach Of Contract?* She urges that the contract which she signed with Park, as previously copied, did not expressly prohibit her from selling the property (*i. e.,* the West Ninth Street Cab Company) herself, and for that reason, she urges that Park cannot recover. In making this argument, Mrs. Manzo has evidently overlooked our case of *Blumenthal* v. *Bridges,* 91 Ark. 212, 120 S. W. 974, 24 L. R. A., N. S. 279. In that case, the owners (Blumenthal) signed a contract with the broker (Bridges), which read:

"We authorize R. E. Bridges to sell for us the tract of land in Cleveland County, known as the Hense Gibson place for $2 per acre. Whatever he realizes over $2 per acre belongs to him. This list is good until January 1, 1908."

Without notice to the broker, the owners sold the land to a third person in October, 1907; and in December, 1907, the broker produced a purchaser, ready, able and willing to buy. When the broker sued for his commission, the owners claimed that they had the right to sell the property themselves, since the contract did not expressly deprive them of that right. Chief Justice Mc-Cullough, speaking for this Court, said:

[1] Though not so stated in the briefs, anyone may quite naturally infer that the case of *Manzo* v. *Boulet, ante* p. 106, 246 S. W. 2d 126, (decided by this Court on February 18, 1952) involved another phase of Mrs. Manzo's litigation concerning the West Ninth Street Cab Company.

"Appellants contend that the contract was not one for exclusive agency, and that they had the right at any time before a sale was negotiated by appellee to revoke it. They rely upon numerous cases which announce the general rule that where real estate is placed in the hands of an agent or broker for sale in the ordinary way, without a stipulation to the contrary and without specifying any definite period of time within which the agent is to have the exclusive right to sell, this does not deprive the principal of the right to sell the land himself when he acts in good faith toward the agent, and that in such cases there is an implied reservation of the right of the principal to sell, free from any charge or liability for commission. See note to *Hoadley* v. *Savings Bank of Danbury,* 71 Conn. 599, 42 Atl. 667, 44 L. R. A. 321; 23 Am. & Eng. Enc. L. 913. The same rule was announced by this court in *Hill* v. *Jebb,* 55 Ark. 574, 18 S. W. 1047.

"Those cases do not, however, announce the controlling principle in this case, for here the contract expressly stipulated for a definite period of time within which the agent might make a sale. In such case the contract implies an exclusive right to sell within the time named, without the right of the principal to revoke the agency unless there is a reservation to the contrary. . . .

"Now, if the principal cannot, under a contract of this kind, stipulating a definite time within which the sale may be made, revoke the agency directly, it follows that he cannot do so indirectly by making the sale of the property himself, thereby putting it beyond the power of the agent to perform the contract. The revocation of the agency, either directly or by making a sale of the property, is a breach of the contract on the part of the principal, and renders him liable to the agent for damages which the latter sustains thereby."

We have copied at length from *Blumenthal* v. *Bridges,* because it completely answers the argument of Mrs. Manzo on the point here at issue, and because our case of *Blumenthal* v. *Bridges* is recognized as an authority in many other jurisdictions. See, also, *Hardwicke* v. *Marsh,* 96 Ark. 23, 130 S. W. 524.

Mrs. Manzo claims that our holding in *Pate* v. *Goyne,* 212 Ark. 51, 204 S. W. 2d 900, impliedly changed the law as stated in *Blumenthal* v. *Bridges;* but we find her claim to be without merit. In *Pate* v. *Goyne,* the contract provided that the broker would get his commission from the owner ". . . if said property be sold . . . on information given, received, or obtained through this (the broker's) agency . . .". The sale was made by the owner without any information having been received from the broker. Because of the peculiar wording of that contract, we held that the broker was not entitled to a commission. But *Pate* v. *Goyne* in no way changed our holding in *Blumenthal* v. *Bridges.*

We therefore hold that when Mrs. Manzo traded the West Ninth Street Cab Company to Drago, within the time of Park's exclusive agency, she thereby breached her contract with Park, and became liable to him for such damages as he could prove he sustained.

II. *What Are Park's Damages?* In the trial of the case, Park admitted that he never produced a purchaser, ready, able, and willing to buy the West Ninth Street Cab Company. We, therefore, hold that Park's measure of damages was neither (a) the 10% commission stated in the contract, nor (b) 10% of what the Hot Springs apartment building was worth; but rather (c) the value of his services already rendered and the disbursements made, in reliance on the contract which Mrs. Manzo breached, plus such prospective profits, as he could establish with reasonable certainty, to have been his except for such revocation.

We revert to *Blumenthal* v. *Bridges (supra)* on this point. There, the broker, within the stipulated time, produced a purchaser, ready, able, and willing, to buy; so the broker's measure of damages was what he would have made if the sale had been completed. But, in the opinion in that case, the Court recognized that such measure of damages applies only when such a purchaser is found. The opinion discusses in detail, the measure of damages in cases of the broker suing the owner who wrongfully revokes the broker's authority. It must be

borne in mind that where the commission is the measure of damages, the broker must—as an essential—produce a purchaser ready, able, and willing, to buy. In 8 Am. Jur. 1090, the holdings of the cases are summarized in this language:

"To entitle a broker to the compensation called for by his contract of employment, he must produce a person who is ready, able, and willing, both to accept and live up to the terms offered by his principal."

In an Annotation in 64 A. L. R. at page 410, the holdings are summarized:

"A broker who has been given an exclusive right for a definite time to negotiate a sale of property, and who has not succeeded in producing a purchaser ready, able, and willing to comply with the terms of the contract, at a time when the owner succeeds in making a sale himself, cannot recover on the contract for the stipulated commissions. The reason for the rule is that the broker has not complied with the terms of the contract on which he seeks to recover."

In the case at bar, no such purchaser was ever found by Park.

When the broker's authority is wrongfully revoked, as it was in the case at bar, he may continue to look for a purchaser, ready, able, and willing to buy, and if he finds such a one within the time stipulated in the contract, then the commission becomes his measure of damages; but if he considers his contract of employment as revoked, and sues for damages for such wrongful revocation, without finding such a purchaser, then he may recover only such damages as proximately result from the termination of the employment contract. Such is the rule stated in 8 Am. Jur. 1007 et seq.

"Although the principal may revoke the broker's agency notwithstanding the employment is to continue for a definite time, unless such revocation is for cause, he renders himself liable for such damages as are the proximate result of his termination of the employment contract."

In the case at bar, it is evident that Park treated the contract as revoked, and sued for such damages. He is therefore entitled to have his recovery include the value of the services he has already rendered, his disbursements, and such prospective profits, as he can establish with reasonable certainty, would have been his but for such revocation.[2] (See 4 R. C. L. 316). Such was the effect of our holding in *Blumenthal* v. *Bridges, supra.* See also *Gibson* v. *Greene,* 174 Ark. 1010, 298 S. W. 209, and *Nance* v. *McDougald,* 211 Ark. 800, 202 S. W. 2d 583.

There was some evidence in the case at bar that Park was put to the expenses of advertising, etc., but in instructing the jury, the trial court used the 10% commission as the measure of damages. Instruction No. 1 is based on the theory of the commissions that Park would have earned, without considering the essential of producing a purchaser, ready, willing, and able to buy. Instruction No. 2 stated that Park's damages would be based on the commissions that he might have earned, if the contract had gone through.[3]

Mrs. Manzo objected to each of the Instructions 1 and 2, and preserved her exceptions in the motion for new trial; and argues here:

"It is a well established rule of law with reference to brokers that a broker, in order to be entitled to recover, must find a purchaser ready, willing, and able to buy on the terms named, and enter into a binding contract. *Nelson* v. *Stolt,* 197 Ark. 1053, 127 S. W. 2d 138."

Since the trial court used the wrong measure of damages in instructing the jury, the judgment is reversed and the cause remanded.

[2] Of course, in the case at bar, prospective profits from the sale are too remote, since the broker admitted that he did not find a purchaser.

[3] Instruction No. 2 contains another error, which is evidently merely typographical. It based Park's recovery on the total sale price, rather than 10% of the total sale price.