REEDER v. EPPS.

Opinion delivered April 27, 1914.

1. REAL ESTATE BROKERS—COMMISSIONS.—In the absence of a special contract providing otherwise, an agent employed to sell or find a purchaser for land, earns his commission and is entitled to recover the same when he procures a purchaser ready, willing and able to buy upon the terms named, and the principal enters into a binding contract with the produced purchaser, or having an opportunity to do so declines to accept the purchaser. (Page 570.)

2. REAL ESTATE BROKERS—COMMISSIONS.—In order to entitle a real estate broker to commissions, the seller must have the opportunity to accept the purchaser upon the terms named, and to enter into a binding contract, for if the negotiations are stopped by the purchaser without fault of the principal before a binding contract is entered into, then no commissions are earned. (Page 570.)

3. REAL ESTATE BROKERS—COMMISSIONS—DEFECTIVE TITLE.—When A. employed B. to sell land for him, an obligation is implied on A.'s part not only to furnish a good title, but a marketable one, and if A. fails to do so upon the production by B. of a purchaser ready, willing and able to buy the land, B. earns his commission, notwithstanding a defect in the title which prevented the sale. (Page 571.)

4. REAL ESTATE BROKERS—COMMISSIONS—BURDEN OF PROOF.—In an action by a real estate broker against a seller who employed him to sell land for the latter, for commission earned, the burden is upon the broker to show that the seller failed to discharge the obligation resting upon him with regard to making a good title. (Page 571.)

Appeal from Lee Circuit Court; *J. M. Jackson,* Judge; reversed.

*Burke & Mann* and *S. H. Mann* and *J. W. Morrow,* for appellant.

In the absence of an agreement that the title shall meet the approval of a certain attorney, the seller is only required to furnish a merchantable title. Warvelle on Vendors (2 ed.) 363.

A marketable title is one which is unclouded by a reasonable doubt as to its sufficiency to enable the purchaser to hold the property in fee simple. In this case there was an unbroken chain from the United States to the appellant. 63 Ark. 548.

A deed from Mrs. Ford was not necessary, and a failure to procure one from her left no cloud upon the title.

Lands are assets in the hands of an administrator for the payment of debts of the estate, and the heirs take title subject to the rights of creditors to subject the lands to the payment of debts.

*H. F. Roleson* and *Thomas & Lee,* for appellee.

1. "One who contracts and pays his money for a title to land ought to get not only a title that he can hold against all adverse comers, but one that he can hold without reasonable apprehension of its being assailed, and one that he can readily transfer, if he desires, in the market." 66 Ark. 436; 121 N. Y. 353; 28 Pac. 1046; 36 N. E. 814; 22 Am. & Eng. Enc. of L. 948, note; 63 Ark. 548.

2. The jury by their verdict found that the purchaser did not cancel the trade without giving the defendant reasonable time in which to comply with the objection to the title and thereby perfect his abstract of title. As to whether the time given in which to perfect this abstract was reasonable or not was a question for the jury, under the evidence, and their finding is supported by the evidence and ought not to be disturbed. 25 Ark. 474; 31 Ark. 163; 23 Ark. 131; 40 Ark. 168; 51 Ark. 467; 70 Ark. 385.

McCulloch, C. J. This is an action to recover compensation alleged to have been earned by appellee as commissions in negotiating a sale of land by him for appellant.

The sale was not consummated, but appellee alleges, and attempts to prove, that he produced a purchaser "ready, willing and able" to buy the land upon the prescribed terms, and that the consummation of the sale was prevented by the fault of appellant.

Appellant resided in the State of Illinois and owned a tract of land in Lee County, Arkansas, which he placed upon the market for sale and listed it with appellee, who was in the real estate business at Stuttgart, Arkansas.

Appellee found a purchaser in the person of one Van Arsdale, and he brought the parties together for sale and purchase. Appellee wrote to appellant informing him of the fact that he had found a purchaser and instructed him to execute a deed to Van Arsdale and deposit it in one of the banks at Stuttgart, where said purchaser was to pay the portion of the price agreed upon and deliver a note and mortgage for the deferred pay-

ments. Appellant executed the deed in accordance with the request of appellee and deposited same in the bank, and also furnished an abstract of title so that the purchaser's attorneys in Stuttgart could have an opportunity to pass upon the title. Appellant was represented by attorneys in Forrest City, Arkansas, and most of the correspondence was thereafter conducted between the two sets of attorneys. The Stuttgart attorneys who examined the title reported to appellant that they found eight defects in the chain of title, one of which was that in order to perfect the title it was necessary to procure a deed from Mrs. Lela Ford. Some of these defects were subsequently corrected, and thereafter the attorneys for the purchaser agreed to waive the other alleged defects and approve the title if appellant would get a quitclaim deed from Mrs. Ford. Appellant, through his attorneys, replied to this request by offering to comply with all the other terms but declined to procure a deed from Mrs. Ford on the ground that she had no interest in the land nor color of title and that she would not give a quitclaim deed unless she was paid something for it. Thereupon the purchaser instructed the bank to return the deed to appellant and the negotiations between the parties were dropped.

In the chain of appellant's title was a deed from the administrator of the estate of W. H. Pearce, deceased, conveying the lands pursuant to an order of the probate court of the county of said decedent's residence. Mrs. Lela Ford was a daughter of William H. Pearce.

The only explanation in the record of why the deed from Mrs. Ford was demanded is a reference in a letter of the Forrest City attorneys to a partition decree and the statement that the sale by the administrator of the William H. Pearce estate had passed the title and that the heirs of the decedent had no further interest in the property.

There are numerous assignments of error in regard to the rulings of the court in giving and refusing instructions. But we need not discuss them, for we are of the

opinion that the disposition of the case here turns primarily upon the question of the sufficiency of the evidence.

The law is well settled that, in the absence of a special contract providing otherwise, an agent employed to sell or find a purchaser for land earns his commission and is entitled to recover the same when he produces a purchaser ready, willing and able to buy upon the terms named and the principal enters into a binding contract with the produced purchaser or having an opportunity to do so declines to accept the purchaser. *Moore* v. *Irwin,* 89 Ark. 289.

He must, however, have the opportunity to accept the purchaser upon the terms named and to enter into a binding contract, for if the negotiations are stopped by the purchaser without fault of the principal before a binding contract is entered into, then no commissions are earned.

"The broker, having presented a proposed purchaser who is capable of entering into a contract of purchase, and willing to do so, has earned his commission when the vendor accepts him and enters into a valid contract with him for the sale of the land, even though the sale is never in fact consummated by reason of the failure of the proposed purchaser to perform his part of the contract." *Moore* v. *Irwin, supra.*

In the present case no contract was entered into between appellant and the purchaser and negotiations ended short of consummation of the sale. Appellee earned no commissions, therefore, unless it be shown that the failure of the negotiations resulted from some fault of appellant. *Garcelon* v. *Tibbetts,* 84 Me. 148; *Johnson Bros.* v. *Wright,* 124 Ia. 61.

The turning point of the case, therefore, is whether or not appellant was at fault in failing to furnish a title satisfactory to the purchaser, for it was his duty under the contract to do that. Appellant employed appellee to sell land for him, and this implied an obligation on his part, not only to furnish a good title but a marketable

one, and, if he failed to do so upon production by appellee of a purchaser ready, willing and able to buy the land, the commission was earned, notwithstanding the existence of a defect in the title which prevented the sale. *Cheatham* v. *Yarbrough,* 90 Tenn. 77; *Birmingham Land & Loan Co.* v. *Thompson,* 86 Ala. 146; Gross on Real Estate Brokers, § 168.

There is no evidence in this case of bad faith on the part of appellant or of unwillingness on his part to consummate the sale. The failure of negotiations resulted from the insistence of the purchaser upon the procurement of a quitclaim deed from Mrs. Ford and the refusal of appellant to accede to that request.

If the request was one which the purchaser had the right to make, then the failure of the negotiations must be laid at appellant's door, and he is liable for the commission, notwithstanding that there was no consummation of the sale. On the other hand, if appellant did all that his contract required of him and the purchaser receded from the negotiations, then the fault was with the latter, and appellant is not responsible, for the reason that the minds of the parties never met. In other words, if the procurement of the deed from Mrs. Ford was necessary to make the title good and merchantable, then the duty rested upon appellant to procure it. But, on the other hand, if the objection to the title was a captious one, or based upon a defect which was not calculated to affect the title, then appellant was not bound to comply with the request by procuring the deed.

The evidence in the case does not establish the fact that Mrs. Ford had any interest in the land or that she held any color of title which cast a cloud upon appellant's title and affected its merchantability.

The burden was upon appellee to show that appellant had failed to discharge an obligation which rested upon him with reference to making the title good. All that is shown here is that Mrs. Ford was a daughter of W. H. Pearce, and a suggestion in one of the letters about a partition decree concerning this land. The title

of W. H. Pearce, however, was transferred to appellant's grantor through the deed of the administrator of the estate, and even if there had been a division of the lands of the estate and allotment of the same to Mrs. Ford that would not constitute a cloud upon the title for the reason that the jurisdiction of the probate court over lands needed for the payment of debts was complete and the deed of the administrator, made pursuant to a sale under order of the court, carried the title, freed from any claims of the heirs.

Our conclusion is that appellee has failed to show any refusal on the part of appellant to comply with any just demand of the proposed purchaser with reference to making the title good and merchantable, and that the failure of the negotiations did not result from any fault of appellant; therefore, he is not liable for the commission.

The facts of the case seem to have been fully developed, and as the evidence is not sufficient to sustain the verdict in appellee's favor, the judgment is reversed and the cause is dismissed.