WALES-RIGGS PLANTATIONS *v.* PUMPHREY.

## Opinion delivered January 19, 1920.

1. BROKERS—AUTHORITY TO SIGN FOR BUYER.—Where an agent to sell land had authority from a purchaser to sign a contract for such purchaser, the vendor could make no objection to consummating the sale on the ground of a lack of authority in the agent to sell.

2. BROKERS—DEPOSIT IN BANK.—The vendor can not object because the initial deposit required to be paid to it was paid to a bank designated by its president, especially where the agent making the deposit directed the bank to pay the deposit to such president as soon as objection was made to the deposit in the bank.

3. BROKER—RIGHT TO COMMISSION.—Where a broker procures an agent ready, able and willing to purchase on the terms authorized and the vendor refused to convey, the broker is entitled to his commission.

Appeal from Washington Circuit Court; *W. A. Dickson*, Judge; affirmed.

### STATEMENT OF FACTS.

This suit was instituted to recover commissions which J. W. Pumphrey, as a real estate agent, claimed from Wales-Riggs Plantations, a domestic corporation. The subject-matter of the suit is a farm of 128 acres which it is alleged the defendant, Wales-Riggs Plantation, authorized the plaintiff, J. W. Pumphrey, to sell for $5,126 upon a basis of 5 per cent. commissions for his services. The plaintiff effected the sale, but the defendant, claiming that it had sold the land to another party prior to plaintiff's sale and had thereby revoked the plaintiff's authority to sell, refused to pay him any commissions.

According to the testimony of John W. Pumphrey, he had known C. W. Riggs, president of the defendant corporation, for about two years before the occurrence of the transaction in controversy. Mr. Riggs made him an offer of certain commissions for selling real estate, including the 128 acres of land which is the subject-matter of this lawsuit and which is known as the Wild Turkey place. Pumphrey sold the place to L. R. Johnson for the defendant and was to receive 5 per cent. commissions

for making the sale. The firm of which Pumphrey was a member lent Johnson $1,000 with which to make the first payment, and according to the contract the balance of the purchase money was to be on deferred payments. Riggs refused to carry out the contract and afterwards sold the property to another person. The negotiations for the sale of the property were carried on in writing between C. W. Riggs, president of the defendant corporation, and J. W. Pumphrey. The correspondence commenced on June 19, 1917, and continued until September 23, 1917, when Riggs wrote Pumphrey stating that he had not made any contract for the sale of the Wild Turkey place to Johnson and had grave doubts whether he ever would make a contract with him. Subsequently he again wrote to Pumphrey declining to make a sale of the Wild Turkey place to Johnson and stated that he had sold it to another person. After several letters had passed between the parties, which we do not deem it material to set forth herein, on the 25th of August, 1917, Riggs sent to Pumphrey the following:

"Contract for Purchase and Sale of Real Estate.

"This agreement made and entered into this 25th day of August by and between Wales-Riggs Plantations, a corporation, acting herein by and through its President, C. W. Riggs, party of the first part, and J. W. Pumphrey, of Memphis, Tenn., party of the second part.

"Witnesseth: That the party of the first part hereby agrees to sell to the party of the second part, or anyone said second party may designate, and the said second party agrees to purchase, the following described real estate in the State of Arkansas and county of Cross, to-wit: East of the river the southwest quarter of Section 36, in Township 9 North, Range 5 East, containing 128.15 acres of land more or less..

The consideration shall be five thousand one hundred and twenty-six ($5,126) dollars, payable as follows: Three hundred dollars in cash upon the execution of this contract, the receipt of which is here acknowledged by the party of the first part, and the balance as

follows: Seven hundred dollars upon delivery of warranty deed, and the remainder is to be paid in twenty equal installments, consecutively, the first to be due and payable December 1, 1918, and annually thereafter.

"All or any part of the deferred payments shall be payable on or before maturity and shall bear interest at the rate of eight per cent. per annum from date until paid.

"A vendor's lien shall be retained upon the property, which shall have all the effect of a mortgage, until all deferred payments shall be made, and if any one of the deferred payments shall become due and remain unpaid for ten days, then in such case the said party of the first part shall have the option of declaring all deferred payments immediately due and payable.

"All deferred payments shall be payable at the Arkansas National Bank at Fayetteville, and shall, if demanded, be payable in United States gold coin of the present standard weight and fineness.

"The party of the first part agrees to furnish a complete abstract of title to said property, for examination only, after which said abstract shall be returned to the said party of the first part.

"The party of the second part shall have fifteen (15) days in which to examine abstract.

"The three hundred dollars this day paid us above recited shall be considered as part of the purchase price, or as a forfeit if the party of the second part fails or refuses to carry out this contract for any reason except defective title.

"The party of the first part guarantees that no taxes are now delinquent and unpaid.

"The party of the second part agrees to pay all taxes for the year 1917 and thereafter. If the title to said property is found to be not good, and cannot be made good within a reasonable time, the three hundred dollars this day paid shall be returned to the party of the second part.

"The final closing of this deal shall be subject to the examination and final approval of the attorney of the party of the first part, when a commission of $256.30 shall be payable to the party of the second part.

"Witness our hands this ........................ day of ........................ 1917. Defendant's exhibit No. 2."

Riggs also wrote Pumphrey a letter on that day requesting him to sign the two enclosed copies of contract and return the same with a $300 bank draft or check. Riggs further stated in the letter that if Pumphrey was afraid to put the $300 in his hands he would arrange with his bank in Kansas City, Missouri, the Fidelity Trust Company, to deposit it with them and let the bank handle his end of the deal. On September 3, 1917, a letter signed "Bailey-Ball-Pumphrey Co., by J. W. Pumphrey," was sent to the Fidelity Trust Company, Kansas City, Mo. It is as follows:

"Dear Sir: As per instructions of Capt. C. W. Riggs, dated Aug. 15th, ult., I am enclosing exchange of $300, as a deposit for earnest money and part payment in a little real estate. This money is to be held by you, and when Capt. Riggs as President of Wales-Riggs Plantations delivers a warranty showing good title to L. R. Johnson it is to be paid to him. If he fails to show title to be returned to me. If he shows good title and said Johnson refuses to carry out the trade, in that event only it is forfeited to Capt. Riggs.

"If you carry out the trade for Capt. Riggs, there is additional amount of $700 with us, $256 is to be paid to me as commission and the balance of $444 to Capt. Riggs. However, he doubtless will file a copy of contract with you giving the details.

"Yours truly."

On the same day Pumphrey wrote to Riggs at Kansas City, Mo., acknowledging the receipt of the contract for the land, stating that he had been out of the city and on that account had not answered sooner. In the letter he stated that Johnson had $1,000 deposited with his firm to make the cash payment, and that he was sending

$300 to the Fidelity Trust Company as earnest money and part payment, leaving $700 in his hands to finish the transaction when the defendant made a warranty deed after having shown good title by abstracts to be examined within fifteen days. He enclosed the duplicate contract for the purchase of the land which had been sent to him by Riggs signed "L. R. Johnson, by J. W. Pumphrey, agent." On September 7, 1917, Riggs wrote Pumphrey a letter, declining to complete the contract because it had been signed by Pumphrey and he did not know whether Pumphrey was Johnson's agent or not. He gave as an additional reason for not completing the sale that Pumphrey had not sent him the $300. On September 10, 1917, Pumphrey wrote to Riggs, if it was not satisfactory that the $300 should be deposited in the Fidelity Trust Company pending the examination of the abstract, that Riggs could call at the bank and get the $300, which he authorized the bank to pay to Riggs personally as well as president of the defendant corporation. On September 14th, Riggs wrote Pumphrey another letter in which he gives several evasive reasons for not signing the contract. On September 15, 1917, the Fidelity Trust Company returned the $300 check to Pumphrey, giving as a reason that Riggs had not called tò see about it and that they could not agree to pass on the title in any event. On September 17, 1917, Pumphrey sent the $300 direct to Riggs and notified him that Johnson was prepared to complete the contract. On September 23, 1917, Riggs wrote to Pumphrey, returning the $300, and in a still later letter wrote Pumphrey that he had sold the place to another person.

The case was tried before the court sitting as a jury. The court found in favor of the plaintiff and judgment was rendered accordingly. The defendant has appealed.

*J. W. Grabiel,* for appellant.

The evidence shows that this is not a suit upon the ordinary broker's contract for a commission but entirely different. The entire contract and negotiations were by

written correspondence and the language is unambiguous, and plaintiff has failed to establish his right to recover, but shows that he has no right to recover, and the judgment should be reversed. The required cash payment was never put up as agreed upon in the correspondence contract, and the commission was never earned.

*B. R. Davidson,* for appellee.

1. Where a broker furnishes a purchaser able and willing to carry out the contract, he is entitled to his commission. 87 Ark. 506. To revoke the authority of an agent, it must be done in good faith and not for the purpose of giving another the preference. 84 *Id.* 462.

2. Good faith and strict neutrality on the part of the owner, as well as between the rival agents, is the test of the owner's liability. 112 Ark. 227-233 and cases cited. The acceptance of the terms by Pumphrey and Johnson was very much clearer than in the case in 47 Ark. 519. In the acceptance here, the length of time that the note ran and other details were stated, but the court held it binding. If a contract is drawn by one party, though not signed by him, it is admissible in evidence as to the terms of the contract. 49 Ark. 122. If a contract is signed by one party and acted upon by the other, it is binding as a written contract. 91 Ark. 162-167. If the terms are made, it will constitute a contract although the parties understood that a written contract embodying the terms should be drawn and executed. 95 Ark. 421-426; 105 *Id.* 575. To retain a check is evidence of acceptance of the variation of the terms if retained an unreasonable time, and what is a reasonable time is a question of fact. 95 Ark. 427. The case was properly decided, and there is no error.

HART, J., (after stating the facts). It is contended by counsel for the defendant that the judgment should be reversed because the parties never entered into any binding contract of sale. It will be noted that the land was properly described in the letters and that the price was agreed upon and the amount of commissions that

the plaintiff should receive in case he made the sale. Mr. Riggs first complained because Pumphrey signed the contract which Riggs had prepared and sent to him for Johnson's signature. The testimony of both Johnson and Pumphrey showed that Pumphrey had authority to sign the contract for Johnson, and hence Riggs could make no valid objections on this account. Because Riggs doubted whether or not Pumphrey had the right to sign the contract for Johnson did not in any respect lessen or take away such authority.

Again Riggs objected that the $300 had been deposited with the Fidelity Trust Company pending an examination of the abstract, instead of having been paid direct to him. In the first place, it may be stated that the deposit of this money with the bank was authorized by Riggs. He had stated in one of his letters that if Pumphrey did not wish to send the money direct to him he might deposit it with the bank. In the seond place, as soon as Pumphrey found out that Riggs objected to this plan of procedure, he wrote to Riggs directing him to take the money out of the bank, and stating that the letter would be authority for the bank to pay him the money. Riggs still declined to complete the sale because the bank did not bring the money to him. His objection in this respect was captious. The bank was the one with which he carried on his business, and was the one to which he had directed Pumphrey to send the money. The testimony of both Riggs and Johnson shows that Johnson had borrowed $1,000 from the firm of which Pumphrey was a member for the purpose of completing his contract for the purchase of the Wild Turkey place. He was prepared to complete his purchase and was only prevented from doing so by Riggs failing to carry out the contract on the part of the defendant corporation.

The evidence shows that Pumphrey found a purchaser in a situation and prepared to complete the purchase on the terms agreed upon. The law is, that when the agent procures a person who is ready, able and willing to purchase the property upon the terms under which

the agent is authorized to negotiate the sale, and the owner refuses to convey, the agent is entitled to his commission. *Poston* v. *Hall,* 97 Ark. 23, and cases cited, and *Reeder* v. *Epps,* 112 Ark. 566.

It follows that the judgment must be affirmed.