EARLS *v.* LONG.

5-475                                                271 S. W. 2d 784

Opinion delivered October 18, 1954.

*Marcus Evrard,* for appellant.

*Frank C. Douglas* and *Claude F. Cooper,* for appellee.

ED. F. McFADDIN, Justice. This is a suit brought by a real estate broker against a landowner for a claimed commission. The broker asserts that he produced a purchaser ready, able and willing to buy under the terms of the contract between the landowner and the broker.

On March 2, 1951, appellee Long, as owner, listed for sale two tracts of land with appellant Earls, a real estate broker. These tracts totalled 162.2 acres; and the listing stated that Long was to receive net $325.00 per acre, and that Earls' commission was to be the amount for which he could sell the lands above net price. The listing was exclusive, and was to remain in force until December 1, 1951. The contract between Long and Earls was in the form of a letter from Long to Earls, and contained these provisions:

"In the event you secure a contract for the sale of this property, or an offer for a contract, there shall be deposited in escrow at the time such contract is executed, a sum not less than $25.00 per acre."

By letter dated April 19, 1951, Long advised Earls that Long was thereby revoking the contract of March

2, 1951, as he had decided to keep his land. In reply, Earls wrote Long on April 20th:

"I cannot and do not consent for you to withdraw this land from my authority to sell and do not recognize your right to withdraw it . . . prior to the writing of your letter of April 19th, I actually secured a purchaser for the property, who will be ready to make deposit in escrow of the earnest money and to make formal contract of purchase well within the time limited under the listing you gave me, and very probably within the next thirty days, which, of course, will be way ahead of the time fixed in your listing agreement. . . . I must and will insist that you carry out your agreement by making a conveyance in accordance with it, at the time fixed by your letter of March 2nd, 1951, and in due time I will present to you formal contract for the sale of the property, accompanied by evidence that the earnest money required in your letter has been deposited in escrow as required in your letter."

On December 19, 1951, Earls filed this suit against Long for $6,285.00 as the amount Earls claimed he would have made on the sale of the land if Long had not revoked the contract. Earls claimed that on March 30, 1951, he entered into a *bona fide* contract with J. E. Stevenson, who agreed to buy the land for $59,000.00; that Stevenson was ready, able and willing to pay said amount of money; and that the sale at $59,000.00 would have made Earls a commission of $6,285.00. Long never sold the land and was the owner at the time of the trial. Other issues not necessary to mention admittedly gave equity jurisdiction. Trial in the Chancery Court resulted in a decree against Earls; and he prosecutes this appeal, claiming he is entitled to a judgment for $6,285.00. The following is his claim on appeal:

"That prior to the time when appellee made any effort to terminate his listing agreement with Cecil L. Earls, the said Earls had found a purchaser who was ready, willing and able to buy the land in question in accordance with the provisions of the listing agreement,

and that the learned Chancellor therefore erred in deciding that Earls was not entitled to judgment against appellee for the amount sued for.''

The law is well settled that when a real estate broker has an exclusive listing for a definite time, then if the landowner wrongfully cancels the contract before the time expiration, the broker may sue either (a) for the commission he would have earned if he found a purchaser ready, able and willing to buy according to the terms of the contract; or (b) for damages for wrongful revocation. *Nance v. McDougald,* 211 Ark. 800, 202 S. W. 2d 583; *Manzo v. Park,* 220 Ark. 216, 247 S. W. 2d 12. The present suit is not for damages for wrongful revocation, but is for the commission that the broker claims because he says he did find a purchaser ready, able and willing to buy under the terms of the contract.

In *Wales-Riggs Plantations v. Pumphrey,* 141 Ark. 565, 217 S. W. 783, Mr. Justice HART, speaking for this Court, said:

''The law is, that when the agent procures a person who is ready, able and willing to purchase the property upon the terms under which the agent is authorized to negotiate the sale, and the owner refuses to convey, the agent is entitled to his commission.[1] *Poston v. Hall,* 97 Ark. 23, and cases cited, and *Reeder v. Epps,* 112 Ark. 566.''

We emphasize that in order for the real estate broker to be entitled to his commission, he must prove that he found a purchaser ready, able and willing to buy *''under the terms of the contract.''*[2] One of the ''terms of the

---

[1] For other cases recognizing and stating the same rule, see 8 Am. Jur. 1090 and 12 C.J.S. 187.

[2] In 8 Am. Jur. 1096, the text reads: "Where a broker's commissions are expressly conditioned upon the consummation of the contract to be negotiated, performance by the parties thereto is necessary before the broker can recover his remuneration . . ." In *Reeder v. Epps,* 112 Ark. 566, 166 S. W. 747, Chief Justice McCullough said of the landowner: "He must, however, have the opportunity to accept the purchaser upon the terms named and to enter into a binding contract, for if the negotiations are stopped by the purchaser without fault of the principal before a binding contract is entered into, then no commissions are earned."

contract," as previously copied, was that if Earls should secure ". . . a contract for the sale of this property, or an offer for a contract, there shall be deposited in escrow at the time such contract is executed, a sum not less than $25.00 per acre. . . ." In other words, one of the conditions that Earls had to fulfill was to bring to Long a proposed contract wherein the proposed purchaser had deposited in escrow $25.00 per acre on 162.2 acres, that is $4,055.00.

Earls prepared the Long contract of March 2, 1951, so any ambiguity in it must be construed against Earls.[3]

But Earls claimed no ambiguity: because when he wrote Long on April 20th and refused to recognize Long's attempted revocation, Earls then said that he had ". . . actually secured a purchaser, *who will be ready to make deposit in escrow of the earnest money and to make formal contract of purchase* . . . and in due time I *will present to you formal contract* for the sale of the property, accompanied by evidence *that the earnest money required in your letter has been deposited in escrow,* as required in your letter." (Italics our own.)

Thus, on April 20, 1951, Earls recognized that the $4,055.00 in cash would have to be deposited in escrow and a formal contract would have to be signed. Earls never, at any time, tendered to Long any such contract and escrow deposit. Earls testified that some time in early April, 1951—and before the letter of April 20th—he went to Long's house and told him that he had a purchaser; but Earls admitted (Trans. p. 97) that *he did not then actually have the $4,055.00 in cash from the proposed purchaser;* and Earls' letter of April 20th impliedly so confesses. Earls did not testify as to any conversations or correspondence with, or tender to, Mr. Long after April 20, 1951. There is evidence that Stevenson (the proposed purchaser) deposited a check for $1,000.00 with Earls as earnest money, and that Stevenson had money deposited in his own account; but all such testimony falls short of fulfilling the condition in the

---

[3] See cases collected on this point in West's Arkansas Digest "Contracts," Key No. 155.

contract that Earls was required to fulfill before he became entitled to his commission. The failure of Earls to produce and tender to Long a purchaser *"ready, able and willing to purchase the property upon the terms under which the agent is authorized to negotiate the sale"* prevents Earls from recovering his claimed commission in this case.

Therefore, without discussing the many other issues, we affirm the decree of the Chancery Court.