## HARDWICK v. MARSH.

### Opinion delivered July 11, 1910.

REAL ESTATE BROKERS—WHEN AGENT'S AUTHORITY EXCLUSIVE.—Where a broker is given the right to sell certain land for a definite period of time, it will be implied that his right to sell during that time is exclusive, and the revocation of his agency, either directly or by making a sale of the property, renders the owner liable to the agent for his commission.

Appeal from Lonoke Circuit Court; *Eugene Lankfora,* Judge; affirmed.

*Geo. M. Chapline,* for appellant.

The fact that a person has employed a broker to negotiate a sale does not, in the absence of a special contract, deprive him of the right to negotiate; and if he procures a sale without any agency of the broker, he is not liable to the latter for a commission. 4 Am. & Eng. Ency. 979; 55 Ark. 574.

*Thomas C. Trimble, Joe T. Robinson* and *Thomas C. Trimble, Jr.,* for appellee.

Appellee is entitled to his commissions. 9 Cyc. 285; 19 Cyc. 222; 78 N. Y. 300; 7 N. C. 422; 26 O. St. 334.

HART, J. This is an appeal by J. D. Hardwick from a judgment rendered against him in the Lonoke Circuit Court in

favor of C. R. Marsh for the sum of $300 for commissions alleged to be due him in the sale of land.

The only assignment of error pressed upon us for reversal is that the evidence does not warrant the verdict. The evidence is practically undisputed, and is substantially as follows:

J. D. Hardwick resided in Ardmore, Oklahoma, and owned certain real estate in Lonoke County, Arkansas, which he wished to sell. C. R. Marsh was a real estate broker located at Carlisle, Arkansas, near where the land was situated. The record shows the following correspondence between the parties in regard to contract of agency for the sale of the land:

"Ardmore, Okla., April 4, 1909.

"Mr. C. R. Marsh,

    "Lonoke, Ark.

"Dear Sir: I received your postal some few days ago, and will say that I have 120 acres of land in your (Lonoke) county out from the town of Lonoke five or six miles, and would like to sell it if possible. I had two offers a year ago on this land, but did not pay either any attention. Described as follows: North half of the southeast quarter and southeast quarter of section (2) in township one north eight west of the 5th principal meridian, in Lonoke County, Arkansas. If you can locate this land and find a chance to get an offer on it, let me know, and I will allow you a good commission, and oblige,

                                        "J. D. Hardwick.

"Let me know what you think would be a fair price for the land."

"Ardmore, Okla., April 8, 1909.

"Mr. C. R. Marsh,

    "Carlisle, Ark.

"Dear Sir: Yours of the 7th to hand, and in reply will say that I do want to sell my 120 acres near Lonoke, and you may send me your contract, which I will sign, also giving price which I would take for land.        "Respectfully,

                                        "J. D. Hardwick."

"Lonoke, Ark., April 12, 1909.

"J. D. Hardwick,

    "Ardmore, Okla.

"Before sending you a contract to sign, I will have to know just what our best terms are on the place. You understand that

I mean how much cash you want and how long a time you will give on the balance. You understand, of course, no land notes draw more than six per cent. interest. I think I can sell your land for $18 net to you. If you will write me the least cash that you will take and the number of years you will give on the balance, I will send you contract to sign, giving me six months to sell in. This, I think, will be all the time I need to sell in. Let me hear from you.

"Your truly,<br>"C. R. Marsh."<br>"Ardmore, Okla., April 26, 1909.

"Mr. C. R. Marsh,
        "Carlisle, Ark.

"Dear Sir: Yours to hand in regard to price I want for my 120 acres in Lonoke County. I learn through the newspapers that a rice mill is being put in at Lonoke, and that times are picking up some there, and my land, or the most of it, is suitable for rice culture, and I have decided to hold my land for the small sum of $25 per acre net to me. Would like to have cash, and can give one, two or three years for balance. This offer good for six months.

"Respectfully,<br>"J. D. Hardwick."<br>"Ardmore, Okla., October 21, 1909.

"Mr. C. R. Marsh,
        "Carlisle, Ark.

"Dear Sir: Your telegram and letters to hand, and I regret to say that you were just two or three days too late, as I had sent deeds and so forth to the Lonoke Real Estate Co., and sale made. I beat your figures some, not much. However, had your letter been sooner, I would have, of course, stuck to my agreement. I have some other lands in Arkansas, and as soon as I can get my papers in shape will give you list of same. I thank you for the interest you have taken in the matter.

"Very respectfully,<br>"J. D. Hardwick."

On the 18th day of October, 1909, Marsh contracted to sell said land to H. Colvin for $27.50 per acre, and in pursuance of the contract of sale, Colvin paid him $200, and was ready, willing and able to consummate the sale by paying the balance of the pur-

chase price. Hardwick refused to make the sale for the reason that he had already sold the land as stated in his letter of October 21, 1909; and also refused to pay Marsh any commissions. Hence this suit.

This case is ruled by that of *Blumenthal* v. *Bridges,* 91 Ark. 212. It is clear that the letter of Hardwick, dated April 26, 1909, constituted Marsh his agent to sell the land for the period of six months. In the case cited the contract of employment was for a definite period of time, and the court, in discussing the question presented for our determination here, said:

"Appellants contend that the contract was not one for exclusive agency, and that they had the right at any time before a sale was negotiated by appellee to revoke it. They rely upon numerous cases which announce the general rule that where real estate is placed in the hands of an agent or broker for sale in the ordinary way, without a stipulation to the contrary and without specifying any definite period of time within which the agent is to have the exclusive right to sell, this does not deprive the principal of the right to sell the land himself when he acts in good faith toward the agent, and that in such cases there is an implied reservation of the right of the principal to sell, free from any charge or liability for commission. (Citing cases.)

"Those cases do not however, announce the controlling principle in this case, for here the contract expressly stipulated for a definite period of time within which the agent might make a sale. In such case the contract implies an exclusive right to sell within the time named, without the right of the principal to revoke the agency unless there is a reservation to the contrary." * * * "Now, if the principal cannot, under a contract of this kind, stipulating a definite time which the sale may be made, revoke the agency directly, it follows that he can not do so indirectly by making a sale of the property himself, thereby putting it beyond the power of the agent to perform the contract. The revocation of the agency, either directly or by making a sale of the property, is a breach of the contract on the part of the principal, and renders him liable to the agent for damages which the latter sustains thereby."

There is no dispute as to the amount of commissions due if any are due.

Applying the principle decided in the above case to the facts in the case at bar, it follows that the judgment must be affirmed.