## WING *v.* DAVIS.

### Opinion delivered November 10, 1919.

REAL ESTATE BROKERS—COMMISSIONS.—A broker wrote appellant, the owner of certain land, asking a price and permission to sell the same; as a result of the ensuing correspondence appellant gave the broker a price at which he might sell the land within a period of six months, provided that appellant did not, himself, first sell the land. *Held* under these facts, when appellant made a binding executory contract to sell the land to another party before the broker made a similar contract, that the broker could recover no commission from the appellant.

Appeal from Monroe Circuit Court; *George W. Clark,* Judge; reversed and dismissed.

*Lee & Moore,* for appellant.

1. The court erred in overruling defendant's motion for a directed verdict at the conclusion of plaintiff's testimony. Davis was not Wing's agent; the terms had never been agreed upon; the most that could be said was that he had an option to buy at $30 per acre, $2,000 cash. Wing's offer was never accepted by Davis or Van Natta.

The terms of an offer must be accepted unconditionally. This case falls within the rule in 104 Ark. 465, and defendant was entitled to a directed verdict under the proof. 104 Ark. 267.

2. The court erred in overruling the motion for a directed verdict at the close of the evidence for both

plaintiff and defendant. Plaintiff was not entitled to recover under the proof. 105 Ark. 526.

3. The court erred in submitting to the jury on its own motion the interrogatories which they answered. Plaintiff was not entitled to recover under the proof and it was the court's duty to direct a verdict. 105 Ark. 526. The interrogatories to the jury were confusing and clearly against the evidence. There was no verdict here upon which the court could enter judgment. Kirby's Digest, § 6207; 38 Cyc. 1919; 9 Ark. 66; 105 N. E. 467; 5 Ind. 457; 8 Blackf. 469; 9 Ark. 62-67; 39 Mich. 710; 33 Am. Rep. 447; 7 Words & Phrases 6596; 116 Iowa 84-89; 89 N. W. 105-107. See also 101 Ind. 75; 37 *Id.* 440; 5 Am. Rep. 221.

4. Davis was not Wing's agent or broker. The evidence shows it and defendant was entitled to an instructed verdict.

*C. F. Greenlee,* for appellee.

1. Counsel for appellant did not object to the special interrogatory nor save exceptions.

2. The letters between the parties and the oral evidence show that appellee had a contract to sell the land for $31.50 per acre, of which appellant was to receive $30 per acre, leaving $1.50 per acre as commission, which makes $480, for which the court properly gave judgment after the jury had answered the interrogatory, and the judgment is right and should be affirmed.

SMITH, J. This is a suit by a real estate broker to recover commissions upon the sale of a tract of land belonging to appellant. The contract was made by correspondence, the material portions of which are as follows:

"December 26, 1917.

"Mr. M. Wing, Oelwein, Iowa:

"Dear Sir: Some time ago I wrote you asking you for a price on some of your lands here, including the east half of section 10. Having no answer to my letter, I am again asking you to give me your best price on these

lands, giving your best terms with rate of interest on deferred payments. * * *

"I do not know that I can sell any of your lands, but will try if you will give me a chance. I do not ask you for an exclusive right to sell your lands, but want a chance if I can find a buyer, as we are trying to settle this country up with good people who will work and help to improve same."

"Oelwein, Iowa, December 29, 1917.

"Mr. J. T. Davis, Roe, Ark.:

"Dear Sir: Your letter received. I don't care to give contract for selling land as I reserve the right to sell if buyers come to me. My price on the east half of section 10, township 1 south, range 4 west, is $30 (thirty dollars) per A. net to me. Should want about $2,000 paid down, the balance on six or eight years' time, interest six per cent., payable annually. * * *

"On any of this should want a payment down, the balance in six or eight years time. Most of this is rented for this coming year. With the exception of the first mentioned would pay a commission as we might determine later. These prices hold good for six months."

"January 15, 1918.

"Mr. M. Wing, Oelwein, Iowa:

"Dear Mr. Wing: * * *

"Now, Mr. Wing, I think your letter was all right, only it may be a little misleading as to my commission in case I was to sell any of your lands, now I will carry out your instructions to the very best of my ability, all I want to understand is how you want to pay my commission in case I should sell some of your farms. Are the prices you give me your net prices and do you want me to get my commission above your price to me or will you pay me my commission out of these prices?

"If you want me to get my commission above the price you gave me, I will endeavor to get my commission above your cash payments if I do not get all cash. However, will submit any offer to you any time I have one

for your consideration, but will do the very best for you at all times that I can.''

"Oelwein, Iowa, Jan. 21, 1918.

''J. T. Davis:

"Just received your letter. I have made Mr. Trotter an offer on the east half of section 10 and can't tell until I hear from him again in regard to commission if you have any chance to sell it out of them if you can, and you can write me and we will talk commission if any is sold. I expect you to get your commission out of the first money that is paid in on it. * * *

"If I don't deal with Trotter, thirty dollars would be my lowest price on the east half of section 10 without commission that is the best thing I got take and don't know whether I sell it or not.''

"January 24, 1918.

"Mr. M. Wing, Oelwein, Iowa:

"Dear Sir: I am writing to inform you that I have closed a deal for the east half of section 10, township 1 south, range 4 west. I have sold same according to your instructions to me in your letter of December 29, $30 net to you, am getting my commission five per cent above this price.

"Please make out deed to Mr. J. O. VanNatta and send deed and abstract to Bank of Clarendon or to Mr. Trotter as you like. Mr. VanNatta will pay cash $2,000 and will want eight years to pay balance, with six per cent. interest as per your offer.

"The cash payment of $2,000 is in the bank for you when deed and abstract is ready.''

The court, over the objection of appellant, submitted to the jury the following interrogatory:

"Do you find from the evidence in this case that on the 28th day of January, 1918, M. Wing had made a contract of sale for the lands involved in this suit to Trotter & Minnis?''

The jury answered, "No," to the interrogatory, and the court thereupon rendered judgment in favor of appellee for the commissions claimed.

The action of the court is defended by appellee upon the authority of the case of *Hardwick* v. *Marsh,* 96 Ark. 23, where the court said:

" 'Those cases do not, however, announce the controlling principle in this case, for here the contract expressly stipulated for a definite period of time within which the agent might make a sale. In such case the contract implies an exclusive right to sell within the time named, without the right of the principal to revoke the agency unless there is a reservation to the contrary.'

"* * * 'Now, if the principal can not, under a contract of this kind, stipulating a definite time which the sale may be made, revoke the agency directly, it follows that he can not do so indirectly by making a sale of the property himself, thereby putting it beyond the power of the agent to perform the contract. The revocation of the agency, either directly or by making a sale of the property, is a breach of the contract on the part of the principal, and renders him liable to the agent for damages which the latter sustains thereby.' "

But the doctrine of that case has no application here, because appellant had expressly reserved the right to sell the land himself. It is true appellant stated in one of his letters that "these prices hold good for six months," but that statement is to be read in connection with other statements found in the correspondence, and we think this correspondence must be interpreted as meaning that a price was given which was to hold good for six months at which appellee might sell provided appellant did not in the meantime make a sale of the land himself. This right was not only expressly reserved, but appellee's letters show conclusively that he took the agency to sell the land subject to that condition. The law of that subject is stated in the case of *Hill* v. *Jebb,* 55 Ark. 574. There a landowner had employed a broker to sell real estate, reserving the right to make a sale himself, and the broker, without knowledge that the owner had previously made a sale, found a purchaser and sued to recover a commission. In denying the right of recovery, the court said:

"Nor does it matter that, after an independent sale by the proprietor, the broker, without notice thereof, found a purchaser; for his agency had then expired by the terms of its creation, and, as he accepted the terms, he could not complain of the result. (Citing cases.)

"If it be a hardship that a broker who has found a purchaser should lose his commissions, the fact is due to his accepting employment liable to be terminated at any time by a sale made without his agency."

Now, appellee did not deposit the two thousand dollars with the bank and the testimony shows that no deposit was made until January 28, at which time Van-Natta, who was the purchaser to whom appellee had contracted to sell, deposited three hundred dollars in the bank, and the court treated this deposit as a binding offer by appellee's purchaser. But the undisputed testimony shows that on January 15 appellant had made a binding contract to sell the land to Trotter & Minnis, who previously had had an option to buy the land, and this option was closed with an offer to buy on January 15. The abstracts were not sent to appellee as requested by him, but were sent to Trotter & Minnis, and, upon the approval of the title by them, the contract was consummated by the delivery of the deed to Trotter & Minnis on February 8. Appellant's letter of the 21st did not state these details, but appellant was shown to be an old man and in poor health, and his letter was written three days before appellee's letter of the 24th advising a sale by appellee to VanNatta; but upon receipt of appellee's letter of the 24th appellant wrote that he was negotiating with another party and could not write definitely what he would do until he had heard from that party.

We think there was no question for the jury, and that there are no circumstances in evidence which would authorize the jury to disregard the testimony of Trotter, who was not a party to this litigation, and who has no interest in its outcome, as he had received his deed before he knew any other person was trying to buy the land, and who testified that he exercised his option to buy the land

by a letter to that effect on January 15. It is true that Trotter's contract of January 15 was executory, and his obligation to perform by paying the purchase money was dependent on the subsequent approval of the title; but so also was the offer by appellee, as his letter advising that he had made a sale requested that the abstract of title be forwarded for examination.

Appellee argues that he had come to terms with his purchaser before he received appellant's letter of the 21st and that he had no notice of a sale prior thereto.

The case of *Johnston* v. *Fuqua,* 105 Ark. 358-363, as well as that of *Hill* v. *Jebb, supra,* is authority for the statement that appellant was not required to give him notice before making a sale. But appellant's good faith in the transaction is shown by the fact that while his contract with Trotter & Minnis was still executory—in the sense that the title had not then been examined, and before he had received appellee's letter announcing that he had found a purchaser—he wrote appellee about his pending deal.

A fair construction of the correspondence set out above is that appellant gave appellee a price at which he might sell land within six months from the time that price was given, provided appellant did not, himself, first sell the land; and the undisputed testimony, which it would be arbitrary to disregard, is that appellant had made a binding executory contract to sell the land before appellee had made a similar contract.

The court should not, therefore, have submitted the case to the jury, but should have directed a verdict in appellant's favor, and the judgment will, therefore, be reversed and the cause dismissed.