No. 24,005.

ISAAC GOLDBERG, et al., *Appellees*, v. THE McNAGHTEN INVESTMENT COMPANY, et al., *Appellants*.

### SYLLABUS BY THE COURT.

1. IMPERFECT PLEADINGS—*Real Issues Considered—Appeal Determined on Its Merits.* Pleadings in some respects imperfect examined, and held that since the contentions of the parties were fully and clearly disclosed, the court will consider the merits of the contentions, without regard to technical defects in presentation.

2. AGENCY—*Agent Appointed "to Lease" Real Estate—Limitation of Agent's Authority.* An owner executed a written instrument appointing an agent, exclusively, for a limited period, "to lease" real estate for ninety-nine years the lease to take effect on acceptance of the terms stated in the instrument. *Held*, authority of the agent was limited to finding a tenant, and did not include authority to contract, or to execute a written lease, on behalf of the principal.

3. SAME—*Instrument of Appointment Not General Offer to Lease.* The instrument of appointment did not constitute an offer on the part of the owner to lease to anyone who, by procurement of the agent, accepted the proposed terms, and acceptance of the proposed terms, expressed to the agent by a person procured by the agent, did not close a contract with the owner.

4. SAME—*Former Case Distinguished.* The case of *Willey v. Goulding*, 99 Kan. 323, 161 Pac. 611, distinguished.

5. SAME—*Revocation of Agency—Agent Entitled to Commissions.* Under the terms of his appointment, the agent could not be prevented from earning a commission, within the period for which he was appointed, by revocation of agency while he was conducting negotiations with a prospective tenant.

6. SAME—*Misconception of Authority on Part of Agent—Good Faith—Evidence.* The fact that the agent misconceived extent of his authority, and executed and delivered a written lease to one who accepted it, is not of itself sufficient to establish misconduct working forfeiture of commission, if the agent acted in good faith, believing he was exercising authority duly conferred.

Appeal from Reno district court; WILLIAM G. FAIRFIELD, judge. Opinion filed December 9, 1922. Affirmed in part and reversed in part.

Goldberg v. Investment Co.

*Eustace Smith, C. M. Williams,* and *D. C. Martindell,* all of Hutchinson, for the appellants.

*F. L. Martin,* and *James N. Farley,* both of Hutchinson, for the appellees.

The opinion of the court was delivered by

BURCH, J.: The action was one to cancel a 99-year lease of real estate in the city of Hutchinson, executed by an agent of the plaintiffs, and for damages. The agent answered, and asked judgment for a commission for negotiating the lease. The lessee answered, and asked, in the alternative, for confirmation of the lease, or for specific performance of contract to lease. Other defendants answered, and judgment was rendered for the plaintiffs, on the pleadings, for cancellation of the lease. The defendants affected by the judgment appeal.

Isaac Goldberg, of Kansas City, Mo., owned the real estate. The McNaghten Investment Company, of Hutchinson, Kan., was agent. E. W. McNaghten, of Hutchinson, was president of the company, and Mahlon L. Ely, of Hutchinson, was the representative of the company who negotiated the lease. J. C. Wolcott, of Kansas City, Mo., was the lessee. Ely is his nephew. Ely went to Kansas City for the purpose of interesting Goldberg in leasing his lots on the 99-year plan, and called on Goldberg at his home. Wolcott and Goldberg had lived in Hutchinson, were well acquainted, and Wolcott accompanied Ely to introduce him to Goldberg. The interview resulted in execution of the following instrument:

"LISTING CONTRACT.

"For consideration of one dollar ($1.00), the undersigned hereby appoints The McNaghten Investment Company, exclusively, agent for six months to lease the following property in the city of Hutchinson, Kansas: 1st and 2nd floors, location lot 27, N. Main St., original townsite, on the basis of the figures as given on the back of this card.

Witness J. C. WOLCOTT                    Owner ISAAC GOLDBERG
Date June 1, 1921                                ANNIE GOLDBERG

[ON BACK]

"A 99-year lease to start upon acceptance on the following terms: $4,000 net annually until Dec. 31, 1925, payable monthly. For the balance of the term of 99 years, $6,000 net annually, payable monthly. The lessee to pay all taxes and expenses whatever.

"One year's rent to be paid upon signing of lease. Two year's rental to be put up as a surety bond for lease. A $30,000 bond to be put before building is demolished.

"Commission $1,625 to be paid upon signing of the lease."

· Ely returned to Hutchinson, and set about finding a tenant. It occurred to him his uncle might be interested, and he wrote to Wolcott. Wolcott sent a telegram, asking him to come to Kansas City. He went to Kansas City, and on June 7 Wolcott accepted the terms proposed in the listing contract. When negotiating with Goldberg, Ely had with him a 99-year lease of real estate from P. J. Leimbach to Herbert Wolff, of Kansas City, Mo., and it was orally agreed the proposed lease should be of the general tenor of the Leimbach lease, except for one inapplicable provision. The investment company executed and delivered to Wolcott a lease, bearing date of June 7, embodying the specific terms of the listing contract and the general terms of the Leimbach lease, with the exception noted. Wolcott placed the lease on record, and made the necessary tenders, which he renewed in his answer. The foregoing facts appear in the answers and, for purposes of the motion for judgment on the pleadings, are to be taken as true.

The petition was drawn without regard to the provision of the civil code requiring a statement of the facts constituting the cause of action in concise language, without repetition, and is difficult to summarize. It alleges that the listing contract was procured "by means of false pretenses and false representations as follows, to wit." Then follows a statement, barren of actionable representation except as contained in the following extract:

"Ely wrote upon the said card a description of plaintiff's property in Hutchinson, Kansas, relating to the first and second floors, and dated the same. He also wrote upon the back the matter as shown in the preceding paragraph. He gave the card to plaintiffs to read. Thereupon the plaintiffs informed the said defendant Ely in the presence of J. C. Wolcott, that they could not do any business with him. That they had not consulted their sons or children nor lawyer. That they could not think of making a lease upon their property without doing so. Thereupon the said Ely assured the plaintiffs that the contract was only a listing contract, making The McNaghten Investment Company the agents for the plaintiffs to find a person who was willing to lease the property for 99 years; that for that reason, it was not necessary for plaintiffs to consult their children or their attorney regarding the lease; that they would have ample time to do so before signing the lease. That thereupon the said J. C. Wolcott represented and stated to the plaintiffs that he thought the making of a 99-year lease was a good deal for the plaintiffs and a good way for them to handle their property. That he was handling his property that way; that he had made or was going to make that kind of a lease on his property at 14th and Main, Kansas City, Mo. The plaintiffs had great confidence in Mr. Wolcott's judgment and friendship. Plaintiff Isaac Goldberg had conducted his business in Hutchinson, Kansas; for more than

twenty years in the same block where Mr. Wolcott was in business and was very friendly with him. The long friendship that had existed between them created in the minds of plaintiffs great confidence and trust in the advice and judgment and friendship of the defendant, J. C. Wolcott, and the plaintiffs at the time believing the said J. C. Wolcott had no interest in the matter, except to advise them as a good friend and counsellor, did thereupon sign the said writing designating The McNaghten Investment Company as their agent for the purpose of finding someone who would be willing to make a 99-year lease satisfactory to the plaintiffs and which they would sign after consulting their children and their attorney."

The listing contract was handed to Goldberg to read. He does not allege he was unable to read or understand the instrument, and assurance as to its legal effect was not actionable. Therefore, the fraud consisted in inducing Goldberg to sign the instrument without taking desired, and to him indispensable, advice, by misrepresenting the character of the instrument, and by representing he would have ample opportunity to take advice before signing a lease. No fiduciary relation on the part of Wolcott toward Goldberg is disclosed here or elsewhere in the petition, and there is no allegation that what Wolcott said was not true.

The false pretense resorted to was this: McNaghten and Ely and Wolcott entered into a conspiracy to obtain for Wolcott a 99-year lease of Goldberg's lots. Ely really represented Wolcott in procuring the listing contract from Goldberg. Ely and Wolcott had a secret understanding that they would conceal the true purpose of their mission when they went to Goldberg's house. They did conceal their purpose from Goldberg and, "by the means aforesaid," induced the plaintiff to sign the listing contract. There is added, therefore, to false representations, concealment of the capacity in which Ely and Wolcott were acting, and it is alleged Goldberg would not have dealt with his old and trusted friend, Wolcott, if he had known they were dealing at arms length.

The petition alleged that the authority conferred by the listing contract was revoked at Goldberg's house in Kansas City on June 7, and that the lease was prepared and signed on June 11, but was dated back.

Allegations of conspiracy, of procuring the listing contract as agent of Wolcott, of execution and delivery of a lease without authority and after revocation of authority, and allegations of other conduct showing service of Wolcott instead of Goldberg and bad faith toward Goldberg, were sufficient to show forfeiture of the agent's commission.

The McNaghten Investment Company and E. W. McNaghten answered jointly. Ely and Wolcott filed separate answers. The scheme of the answers was this: Each defendant presented his part in the transactions embracing procuring the listing contract, and execution, delivery and recording of the lease to Wolcott. In that way the entire petition was fully traversed, and a state of facts was presented which not only negatived conspiracy, false representation and pretense, and bad faith, but entitled the agent to his commission, and entitled Wolcott to his lease, if his views of the law be sound. The only substantial defect in the scheme of the pleadings was omission of general denials. The answer of the agent did not formally deny false pretense, false representation, and revocation of agency. Conspiracy and collusion to make false pretenses and representations were expressly denied. Good faith in acting for the plaintiff was alleged, and the procuring of a tenant, under authority of the listing contract, ready, able and willing to take the lease on the terms proposed, was alleged. Like the petition, the agent's answer contained statements of conclusions respecting nature of the listing contract, and extent of authority it conferred. The manifest purpose was to meet the issues tendered by the petition and, under the circumstances, the slip in pleading, if there be one, ought not to defeat recovery of the agent's commission. There were, perhaps, technical imperfections in other portions of the answers, but the contentions of the parties were fully and clearly disclosed, and the court is concerned with the substance of those contentions, rather than with lack of artistry in presentation.

What was the extent of the agent's authority, conferred by the listing contract?

The heading "Listing Contract," is not interpretative. The nature of the contract must be determined from what was written under the heading.

The words "to lease," do not of themselves indicate authority to conclude a contract of lease or to execute a written instrument of lease. In the case of *Brown .v. Gilpin*, 75 Kan. 773, 90 Pac. 267, it was contended an agent appointed "to sell" real estate had power to bind his principal by a contract of sale. The court reviewed authorities, English and American, and reached the conclusion the agency was limited to finding a purchaser. The decision was foreshadowed by earlier ones, and has since been approved and fol-

lowed in a number of cases. The court still regards the decision as sound in law. Besides that, social interest is involved. Real-estate brokers may conduct negotiations, and they will be protected in the matter of compensation for services rendered pursuant to authority, but the making of contracts which will carry title to real estate should be left to owners, unless they intentionally and clearly delegate the function to others. There is nothing in the nature of a lease for 99 years which makes it necessary to interpret an agency to lease differently from an agency to sell, and the court holds that, so far as the words "to lease" characterize the agency created by what, for convenience, has been called the listing contract, it merely authorized the finding of a tenant, and did not embrace concluding or executing a contract of lease.

The meaning of the instrument must be determined by consideration of all its provisions. It contained a provision that the proposed lease should start on acceptance of the stated terms. A first impression might be that acceptance of terms, expressed to the agent by a tenant he procured, would close a contract. Reflection shows, however, that the provision relates to description of lease, and not to scope of authority. It merely fixed beginning of the term, and bore no more relation to the grant of authority than provision for length of term or annual rent.

Nothing else in the contract indicates an intention to confer authority on the agent to contract on behalf of the principal, and the agent's authority was limited to procuring someone ready, able and willing to take a lease on the terms proposed.

Wolcott contends the listing contract itself constituted an offer by Goldberg to lease to anyone who, by procurement of the agent, accepted the proposed terms. The listing contract contained all the data essential to a contract of lease. It was not necessary that stock terms, common to such instruments and implied by law, should be mentioned. According to the answer of Ely, the terms of the Leimbach-Wolf lease were to be followed. Therefore, the listing contract was a sufficient memorandum, signed by the party to be charged, to satisfy the statute of frauds, and if it did have the effect of a general offer to lease, oral acceptance of the offer completed an enforceable contract to lease.

Wolcott's contention is based on the decision in the case of *Willey v. Goulding*, 99 Kan. 323, 161 Pac. 611. The opinion in that case discloses negotiations relating to terms on which Goulding, a

tenant, might continue to occupy a building. His lease expired on February 1. Fulton, the owner, was a nonresident, and was represented by a resident agent. On January 10 Fulton wrote to the agent, directing him to notify Goulding that his rent would be $40 per month after expiration of the lease. On January 19, Fulton wrote the agent stating he had made a proposition to Goulding's son, which seemed satisfactory, as follows: "$35 per month for the first year and them to repair the room to suit themselves, and should they want it for two years the rent will be $40 per month." (p. 325.) This letter was written in response to a letter from the agent, and was shown by the agent to Goulding. Goulding proceeded to make repairs, and paid the rent for February, which the agent remitted to Fulton. Controversy arose over the form of written lease prepared by Goulding and sent to Fulton by his agent for signature, Fulton insisting it should contain a sale clause. The material portions of the syllabus read as follows:

"The evidence in an action for unlawful detainer held to have a tendency to show that a letter was written by the owner of real estate to his agent containing an offer to rent it to the occupant for a stated amount; that the letter was shown to the occupant, who notified the agent that he accepted the offer; and that the relations of the parties was such that notice to the agent was equivalent to notice to the principal.

"Assuming the facts to be established as indicated in the preceding paragraph, a completed contract resulted, . . .

"A sufficient memorandum in writing to satisfy the statute of frauds may consist of a letter from the owner of real estate to his agent, offering to lease it on stated terms, followed by an oral acceptance by the tenant." (¶¶ 1, 2, 3.)

The distinction between the Goulding case and the one under decision seems to the court to be very marked. In the Goulding case we start with correspondence between principal and agent respecting negotiations with a prospective tenant. The letter of January 10 was an offer to lease to Goulding, for $40 per month, which the agent was directed to communicate to Goulding. The letter of January 19 contained a proposition to lease on modified terms, already given to Goulding's son. True, the agent was not expressly directed, as before, to take the proposition to Goulding; but considering the phraseology of the letter, the state of the negotiations, and the relations of the parties, the proposition was an offer to lease to Goulding. When the offer was communicated to Goulding, and he accepted it, a contract was formed, and the letter was a sufficient memorandum, under the statute of frauds.

In this case, we have simply the appointment of an agent to find a tenant willing to take a lease on specified terms. The contract is with the agent, and the only liabilities arising upon the contract are between the parties to it. It is not a contract to pay the agent a commission for producing a tenant, plus an offer to make a lease to any qualified person whom the agent may produce. After the agent has performed on his side, and has earned his commission, privilege to make a lease or not remains to the principal, who rests under no obligation to the agent's customer. All this is settled law governing contracts employing real-estate brokers, and, generally a communication between an owner and a real-estate broker, stating terms on which the owner will sell or lease, does not constitute an offer at large which may be accepted by anyone to whom the broker exhibits it. (*Schuhmacher v. Lebeck,* 103 Kan. 458, 173 Pac. 1072; *Wiggam v. Shouse,* 105 Kan. 637, 185 Pac. 896; *Spiher v. Johnson,* 110 Kan. 339, 341, 203 Pac. 696; *Corley v. Ehlers,* 99 Kan. 748, 163 Pac. 140; *Brown v. Gilpin,* 75 Kan. 773, 786, 90 Pac. 267.)

The petition alleged revocation of agency, occurring at a stated time and place. The answer disclosed that before revocation occurred the agent had not only entered upon the business of finding a tenant, but had secured Wolcott as a tenant. The next day the plaintiff attempted to revoke the agent's authority, but the agent refused to submit to any revocation. The listing contract created an exclusive agency for a definite period. It expressed a consideration, and in any event became binding on the principal as soon as the agent expended time and money in the principal's service. The agent could not then be prevented from earning a commission, within the period of his appointment, by revocation of authority while he was conducting negotiations with a prospective tenant.

There is no dispute that Wolcott was ready, able and willing to take a lease on the terms proposed. Therefore the agent is entitled to the stipulated commission, unless the plaintiff can establish material false representation or false pretense in procuring the agency, or actual bad faith in exercising it. This is the only issue remaining to be tried. In this connection it may be noted that, if the investment company executed and delivered the lease to Wolcott in good faith, in the belief it was acting pursuant to authority conferred by the listing contract, the mistake as to the extent of its power would not of itself work forfeiture of commission.

The judgment of the district court canceling the executed lease

and denying specific performance, is affirmed. The judgment disallowing the agent's commission is reversed, and the cause is remanded for trial of the single issue indicated, the result of which will determine the nature of the judgment to be rendered.