### SHAWVER et al. v. EWING.[*]

(Circuit Court of Appeals, Eighth Circuit. September 2, 1924.)

No. 6534.

1. **Principal and agent** ⚖═33, 41—Rule as to power of revocation by principal stated.

Generally agency not coupled with any interest in property may be revoked by principal at his will at any time, and with or without good reasons, though revocation during period during which principal has bound himself not to exercise power of revocation entitles agent to damages.

2. **Brokers** ⚖═10—Authority to sell oil lease held revocable at will of principal.

Broker's authority to sell oil lease *held* revocable at any time by principal before broker had done anything substantial in performance of agency; broker's agency not being coupled with any interest in the property.

3. **Brokers** ⚖═44—Contract held not to obligate owners not to revoke agency before specified time.

Contract authorizing broker to sell oil lease, and entitling broker to specified commission if sale is completed and payment is made on or before certain date, *held* not a contract on part of owners not to revoke agency before such date.

4. **Brokers** ⚖═44—Owners not precluded from defending on ground of revocation of agency by offer to sell to different purchaser.

Owners who revoked agency before purchaser was presented by broker were not precluded from defending action for commission on ground of revocation, by statement, when such purchaser was presented, that they were ready to sell to other purchaser in accordance with their agreement, on theory that such statement canceled revocation.

5. **Courts** ⚖═367—State Supreme Court's holding that part performance converts unilateral contract employing broker into binding obligation held not rule of property.

State Supreme Court's decision that part performance of unilateral contract employing broker converts instrument into binding obligation *held* not a rule of property binding on federal courts in case involving construction of contract, since in such case federal court can exercise independent judgment.

[*]Rehearing denied December 1, 1924.

In Error to the District Court of the United States for the District of Kansas; John C. Pollock, Judge.

Action by P. W. Ewing against E. B. Shawver and others. Judgment for plaintiff, and defendants bring error. Reversed.

H. W. Hart, of Wichita, Kan. (S. B. Amidon, S. A. Buckland, and Glenn Porter, all of Wichita, Kan., on the brief), for plaintiffs in error.

C. G. Yankey, of Wichita, Kan. (W. E. Holmes, D. W. Eaton, and John L. Gleason, all of Wichita, Kan., on the brief), for defendant in error.

Before KENYON, Circuit Judge, and AMIDON and SCOTT, District Judges.

AMIDON, District Judge. Ewing brought this action as plaintiff against defendants to recover commissions which he claims to have earned as a broker in their service. Defendants were the owners of an oil lease on a quarter section of land. The property was already producing oil, and other wells had been drilled to a point which would soon disclose whether the entire property was productive or not. On the 28th day of January, 1922, defendants executed the following agreement:

"This agreement, made and entered into this 28th day of January, 1922, by and between E. B. Shawver and O. E. Sutter, hereinafter called first parties, and P. W. Ewing, hereinafter called second party, witnesseth:

"That first parties have this day prepared a certain assignment for an oil and gas lease on the southeast quarter of section 23, township 28, range 5 east of the 6th P. M. in Butler county, Kansas, and which said assignment calls for a stated consideration of one million dollars.

"Now, therefore, first parties agree that, in the event said sale is completed and the down payment of $250,000 made to them, and if the same be done on or before February 20, 1922, that they will, out of said payment of $250,000, pay to second party for his services in completing said sale of said lease, the sum of $100,000."

This instrument, duly signed by defendants, and the form of assignment of the lease referred to therein, were delivered to plaintiff on Saturday evening, January 28. Defendants insist that by a collateral contract between the parties Ewing was restricted to selling the property to the National Refining Company, and that it was the understanding between the parties that he should leave on the night the instrument was signed for Cleveland, Ohio, to open negotiations with that company. The company mentioned was a responsible concern, and was also the owner of a large amount of oil property in the vicinity of defendants' land. Defendants were well acquainted with this company, its financial responsibility, and its methods of handling and wisely developing oil properties. The assignment of the lease reserved to defendants a quarter interest in the property. They insist that, owing to the large sum for which they were to accept the notes of the purchaser, and the fact that they reserved an interest in the property, and also the fact that by the terms of the assignment they depended upon the production of oil from the property to pay the balance of the purchase price, they were deeply concerned as to who should be the purchaser of the lease, and never intended to allow Ewing to sell it to any person acceptable to him who was willing and able to make the down payment of $250,000.

On Monday, January 30, defendants discovered that Ewing was still in Wichita, and had not gone to Cleveland to open negotiations with the National Refining Company. Thereupon they caused written notice to be served upon him revoking his employment. At the time this notice was served, the only action that plaintiff had taken to carry out the sale of the lease was to telephone a broker by the name of Parker in Pittsburgh, Pa., and also telephone the National Refining Company, presenting the opportunity of purchasing the lease. The result of the latter conversation was that the president of the company stated to the plaintiff that his company was in no wise interested in the property. This telephone conversation was also promptly confirmed by a telegram of the same tenor.

On the morning following his receipt of the notice revoking his appointment, plaintiff called upon defendants to ascertain the reason of their action, and at this meeting the revocation was reaffirmed.

Notwithstanding the revocation of the agency plaintiff continued his efforts to sell the lease. Before he found a purchaser, he learned of the bringing in of the new wells and the great increase in the value of the property. On the 14th day of February he presented to defendants the Mahutska Oil Company as a purchaser. At that time this company, through its executive officers, tendered to defendants New York drafts for

$250,000, and offered to purchase the assignment of the oil lease upon the terms set forth in the form of assignment prepared by defendants. Defendants declined to accept this purchaser.

Thereafter plaintiff brought the present suit to recover the sum of $100,000 as commissions. A judgment was rendered for that amount in his favor, of which defendants seek a reversal by the present writ of error.

The answer pleaded the revocation of plaintiff's agency and also challenged his right of recovery by specific averment that the complaint failed to state facts sufficient to constitute a cause of action. As the complaint is based upon the written memorandum above quoted, and attaches that instrument as an exhibit, the above averment is sufficient to challenge plaintiff's right of recovery. The answer also contains a general denial. At the conclusion of the evidence defendants moved for an instructed verdict. They also requested the court to charge the jury that, if the authority of plaintiff to sell the property had been revoked before he obtained the purchaser which he tendered to defendants, such a tender would be too late, and would not entitle plaintiff to recover. Those requests were refused and exceptions saved.

It is plain, therefore, that the proper interpretation of the instrument sued on and the effect of its revocation are issues which were clearly presented in the trial court and are here for review.

[1] It is not claimed that plaintiff's agency was coupled with any interest in the property. Under such circumstances "it is the general rule of law that the authority of the agent may be revoked by the principal at his will at any time and with or without good reason therefor." That is the rule as stated by Mechem, § 563 (2d Ed.). He cites in its support a multitude of cases, beginning with the leading authority in this country, Hunt v. Rousmanier, 8 Wheat. 174, 5 L. Ed. 589. That rule is too firmly established to call for further discussion. It is equally well established, however, that the principal may, by a valid contract, bind himself not to exercise the power of revocation within a specified period. If the principal violates such a contract he will be liable in damages. That liability, however, does not destroy the power to revoke. If the principal revokes the agency before performance by the agent, that ends the agency, notwithstanding the fact that the principal may be liable in damages if he has by

a binding contract agreed not to revoke. Mechem, §§ 565 to 569.

[2] These principles, settled beyond controversy, are determinative of the present case. Defendants had the power to revoke plaintiff's agency. They exercised that power, and from the moment plaintiff received notice of the revocation his agency ceased. Nothing done by him after his authority was revoked could enhance his rights or add to defendants' liabilities.

[3] We come therefore to the second question. Had defendants bound themselves by contract not to exercise the power of revocation? Plaintiff says they had. He bases his contention and his right of recovery upon the phrase in the memorandum above quoted which reads as follows: "And if the same be done on or before February 20, 1922." Does that language constitute a contract on the part of defendants not to revoke the agency before the date named? We think that question must be answered in the negative. The clause does not purport to grant to plaintiff the irrevocable right to sell the property at any time before the date named. The fixing of the date is a reservation made for the protection of defendants. Its object is to set a limit at which the agent's authority shall expire, if not sooner terminated. Mechem, § 2452. Ewing paid no consideration for his contract with the defendants. The only consideration for the instrument was the service to be rendered by the plaintiff, and the instrument did not oblige him to render any service.

The instrument here sued upon is identical with the contract involved in Brown v. Pforr, 38 Cal. 550. The following language used in that decision is directly applicable to the present case:

"Counsel find the alleged restriction upon the defendant's power of revocation in the words by which the time within which the plaintiffs are required to perform is limited to one month from the date of the contract; but, as it seems to us, the restriction is upon the power of plaintiffs, and not upon that of the defendant. It seems obvious to us that the restriction was intended for the benefit of the defendant, and not the plaintiffs. The force of the limitation is, that the defendant will pay them the stipulated price for the service if they completely perform it within one month; otherwise he will pay them nothing. There is nothing directly or impliedly affecting the question of revocation; and, indeed, we are unable to perceive how, un-

der any circumstances; a mere limit as to the time allowed for the performance of a contract of agency to sell land, can be construed into an agreement on the part of the principal not to revoke the power."

This decision is not overruled or qualified in Blumenthal v. Goodall, 89 Cal. 251, 26 Pac. 906, as plaintiff's counsel suggest. On the contrary it is there again declared that the contract in Brown v. Pforr, did not grant an irrevocable right.

The only other case which the diligence of counsel and the court has discovered involving an instrument similar to that sued upon in the present case is Milligan v. Owen, 123 Iowa, 285, 98 N W. 792. The Supreme Court of Iowa expressed its view of the rights of the broker as follows:

"But we are satisfied that the plaintiff failed to establish any right of action, for the reason that he did not prove such a contract of agency as that a revocation of his authority by defendant would entitle him to any damage. * * * Defendant did not offer to plaintiff an exclusive agency, but simply said to him that, if he or any one else could secure a purchaser by March 1st, on the terms specified, the land might go. This gave nothing more than an ordinary revocable authority, binding the defendant to pay a commission only if a purchaser should be found before the authority was revoked."

It would serve no useful purpose to examine and distinguish in detail the multitude of cases cited by counsel for plaintiff. All of them involve formal contracts granting to the broker, by appropriate language, a definite time within which to make a sale. In many of the cases this branch of the contract is supported by an independent consideration, and in nearly all of them the agency was by the express terms of the contract made exclusive. In the following cases the contract contained a provision binding the owner to pay the commission if the property was withdrawn from sale during the time specified, or if it was sold by the owner, or by any other person than the broker: Novakovich v. Union Trust Co., 89 Ark. 412, 117 S. W. 246; Crane v. McCormick, 92 Cal. 176, 28 Pac. 222; Kimmell. v. Skelly, 130 Cal. 555, 62 Pac. 1067; Singleton v. O'Blenis, 125 Ind. 151, 25 N. E. 154; Axe v. Tolbert, 179 Mich. 556, 146 N. W. 418; Lapham v. Flint, 86 Minn. 376, 90 N. W. 780.

In the following cases the agent had fully performed the contract, or had carried the negotiations so far that performance was imminent, and the revocation was made in bad faith for the purpose of defeating the right of the agent to his commissions: Blumenthal v. Goodall, 89 Cal. 251, 26 Pac. 906; Hardwick v. Marsh, 96 Ark. 23, 130 S. W. 524; Goldberg v. McNaghten Co., 112 Kan. 348, 211 Pac. 157; Sill v. Ceschi, 167 Cal. 698, 140 Pac. 949; Johnson & Moran v. Buchanan, 54 Tex. Civ. App. 328, 116 S. W. 875.

In the present case, at the time of revocation, the plaintiff had done nothing of a substantial character towards the execution of the agency. There are no features of hardship here such as have frequently induced courts to adopt a liberal construction as to what would constitute full performance under a brokerage contract. Mechem on Agency, § 2454.

[4] At the time plaintiff presented the Mahutska Oil Company as a purchaser on the 14th of February, defendants, as part of. the colloquy between the parties, stated that they were ready to sell the lease to the National Refining Company in accordance with their agreement. Plaintiff now insists that this statement had the effect of canceling the revocation of plaintiff's agency, and that defendants cannot now rely upon such revocation. The doctrine invoked is that which forbids a litigant to "mend his hold" by alleging a new ground for refusing performance of a contract after the matter has passed into litigation. But the defense of revocation was not something that was invented by defendants after this suit was brought. It had been presented by them to plaintiff in the most unequivocal form. Plaintiff cites such cases as Sandefur v. Hines, 69 Kan. 168, 76 Pac. 444; Kansas Union Life Ins. Co. v. Burman, 141 Fed. 835, 73 C. C. A. 69; Spitzer v. Board of Trustees (C. C. A.) 267 Fed. 121. In all of these cases the party against whom the rule was enforced had throughout the negotiations between the parties insisted upon a specific ground as a reason for nonperformance. At the trial he presented an entirely new defense which had never been urged in the negotiations between the parties. The courts very properly held that he could not thus mend his hold by bringing forward an entirely new defense. It is quite plain that the defense of revocation in the present case is not of that character. It was not invented after the suit was brought, but had its origin long before the plaintiff had done anything towards obtaining the purchaser which he tendered. Plaintiff was in no way misled or prejudiced by

the statement. The contention of counsel is fully answered by the decisions of this court in Burke v. Lockhart (C. C. A.) 287 Fed. 117, and Mente v. De Witt Rice Mill Co., 251 Fed. 252, 163 C. C. A. 408.

[5] Counsel for plaintiff also cite the decision of Braniff v. Baier, 101 Kan. 117, 165 Pac. 816, L. R. A. 1917E, 1036, in which the Supreme Court of Kansas (the state in which the present transaction occurred) ruled that part performance of a unilateral contract employing a broker converted the instrument into a binding obligation. Counsel insists that this decision of the Supreme Court of the state is a rule of property binding upon federal courts. We cannot adopt that view. The present case involves nothing but the proper interpretation of a business contract. As to such questions, it has long been established that the federal courts exercise an independent judgment. We do not find it necessary to pass upon the question involved in the Braniff case. There is much authority against the decision of the Kansas court. Mechem on Agency, § 2452 et seq.

We rest our decision in the present case first upon the ground that the instrument sued upon did not vest the plaintiff with an irrevocable right to sell the lease at any time before the date specified. And, second, upon the ground that at the time plaintiff's agency was revoked, he had done nothing of a substantial character in the performance of the agency.

Defendants' motion for a directed verdict should have been granted.

The judgment of the trial court is reversed.