Halbert v. Block-Meeks Realty Co.

5-1146                                     297 S. W. 2d 924

Opinion delivered January 28, 1957.

Joseph C. Kemp, for appellant.

Spitzberg, Mitchell & Hays and Beresford L. Church, Jr., for appellee.

J. Seaborn Holt, Associate Justice.    Appellee, Block-Meeks Realty Co., brought this suit against appellants, Roy Halbert and his wife Alice Halbert, for a 5% sales commission on the sale of certain real property in Little Rock.   The listing price was $16,500.   Trial before the court, sitting as a jury, resulted in a verdict for appellee for $825 and from the judgment is this appeal.

For reversal appellants rely on the following points: "1.   The listing contract executed between the parties had expired before the sale by the defendants.   2.   The

plaintiff failed to prove that the sale was made 'on information given, received or obtained through' the plaintiff. 3. There is no proof that the plaintiff was the procuring cause of the sale. 4. The plaintiff failed to prove that it found a buyer ready, willing and able to buy according to the fixed price set out in the contract. 5. The evidence does not support a finding that the defendants received value in the amount of $16,500 for their property." The trial court found against appellants on all of these contentions, and we think correctly so. The evidence shows that on July 27, 1955, appellants entered into an *exclusive* listing contract with the appellee real estate firm for the sale of the property involved, No. 1 Myrtle Lane, from July 27, 1955 "till 8-15-55." During this listing period there was evidence that Mr. Block, one of the appellees, attempted to bring about a sale or trade of the property to Mr. and Mrs. Roy Bosson and that on August 16, 1955, the Bossons conveyed their home to the Halberts as part of the consideration for the transfer of the property here involved, No. 1 Myrtle Lane, which was later conveyed by the Halberts to the Bossons. It appears that Block made a diligent effort to bring about the sale of the Myrtle Lane property to the Bossons, such deal to include Bosson's equity in the Markham Street property. Roy Bosson testified, in effect, that he and his wife bought the Myrtle Lane property from Roy Halbert and his wife; they looked at the property shortly after July 25, 1955; that the first contact he had with Halbert was when he, his wife, and daughter were visiting the property and Mr. Halbert came in; that later Halbert brought Mr. Block to Bosson's Markham Street property to make an appraisal of it, and that Block examined the house thoroughly. Bosson did observe Block-Meeks signs on the Myrtle Lane property at the time. It was stipulated that the Bossons executed a deed to their Markham Street property to the Halberts August 16, 1955. Bosson further testified that it was a day or two before he and his wife executed this deed that he reached an agreement with the Halberts for the purchase of the Myrtle Lane property here involved. Roy Halbert testified to the same effect. The listing contract

contained this provision: "If said property be sold or disposed of during the period above stated, no matter by whom or in what manner, I agree to pay the Block-Meeks Realty Company a commission of Five (5%) as compensation for the services of Block-Meeks Realty Company to be rendered herein." As pointed out, it is undisputed that the deed from the Bossons to the Halberts, conveying the West Markham Street property, was executed August 16, 1955, and Bosson testified that his agreement with Halbert to sell the Halbert property to him was a day or two before the execution of this deed. We hold that there was substantial evidence to support the finding of the trial court that the sale was made during the listing period and for the listing price, amounting to $16,500. In the circumstances here we think it was clearly the intention of the parties that the day of August 15, 1955, should be given an inclusive meaning, that is, that the contract did not expire till the end of that day. Mark Block testified that such was his understanding. ". . . no general rule can be laid down to determine whether the word 'until' is a word of inclusion or exclusion. A strictly literal definition would doubtless make it one of exclusion, but popular use is quite as likely to give it an inclusive as an exclusive sense. The use of the word in particular instances may be such as to leave no room for doubt as to its meaning, and, in such cases, the court will give it the meaning intended. Where the word is used with reference to a future day on which something is required to be done, 'until' may have an inclusive or an exclusive meaning, according to the use to which it is applied, the nature of the transaction which it specifies, and the connection in which it is used; and it may be held to include the day to which it is prefixed." 52 Am. Jur., Time, § 25, p. 351. See also *Thorn* v. *Delany and Pennywit,* 6 Ark. 219, where we held that where an appellant had been given "until" July 5 to render a bill of exceptions, and the tender was made on that day, it was within the time allowed.

Under this contract we hold that appellee had an *exclusive* listing of the Myrtle Lane property, and when

it was shown that the sale of this property was made by the Halberts to the Bossons within the listing time, it made no difference to whom or in what manner the Halberts sold to the Bossons, they could not defeat appellee's commission, even though the Halberts sold to a stranger to appellee. It was not necessary under the plain wording of the contract for appellee to show that the sale was made on information given or received or obtained through appellee's efforts, or that appellee had found a buyer, ready, willing and able to buy, for the contract contained no such provisions. In other words, during the listing period, appellants could not sell their property to anyone, without becoming liable to appellee for the commission specified in the contract. There was another provision of the contract which provided: "If said property be sold or disposed of *after* the above period on information given, received or obtained through this agency, I agree to pay the Block-Meeks Realty Company the commission as herein provided." Obviously this provision would only come into play had the sale of the property here been consummated after, — and not before —, the expiration of the exclusive listing period, and under its terms appellee could recover its commission only on showing that the sale was made after the listing period "on information given, received or obtained through this (appellee's) agency." "While a contract employing a broker and providing for the payment of a commission to him may be valid, binding, and enforceable according to its terms, there is nothing special or peculiar about it which calls for its construction other than by the rules which govern the interpretation of contracts generally." 12 C. J. S. § 59, p. 133. In *Hardwick* v. *Marsh,* 96 Ark. 23, 130 S. W. 524, in construing a contract on a real estate commission, we said: ". . . the contract expressly stipulated for a definite period of time within which the agent might make a sale. In such case the contract implies an exclusive right to sell within the time named, without the right of the principal to revoke the agency unless there is a reservation to the contrary . . . Now, if the principal cannot, under a contract of this kind, stipulating a definite time

which the sale may be made revoke the agency directly, it follows that he can not do so indirectly by making a sale of the property himself, thereby putting it beyond the power of the agent to perform the contract. The revocation of the agency, either directly or by making a sale of the property, is a breach of the contract on the part of the principal, and renders him liable to the agent for damages which the latter sustains thereby.'' The principles of law announced in the case of *Moore* v. *Holman Real Estate Co.,* 129 Ark. 465, 196 S. W. 479, also apply with equal force here.

Finding no error, the judgment is affirmed.