John E. ATKINS d/b/a Atkins Real Estate *v.*
L.L. COLE and SON, INC.

CA 02-177                                        84 S.W.3d 899

Court of Appeals of Arkansas
Division IV
Opinion delivered September 18, 2002

*Worsham Law Firm, P.A.,* by: *Richard E. Worsham* and *Susan M. Fowler,* for appellant.

*John H. Bell,* for appellees.

*Quattlebaum, Grooms, Tull & Burrow, PLLC,* by: *Timothy W. Grooms, Leon Holmes* and *Kristine G. Baker, amicus curiae,* for the Arkansas Realtors Association.

JOHN B. ROBBINS, Judge. Appellant John E. Atkins, d/b/a Atkins Real Estate, entered into a written contract to sell real estate owned by appellee L.L. Cole & Son, Inc. The contract provides that the listing period "begins July 15, 1995, and expires 365 days later unless renewed in writing." On November 8, 1995, L.L. Cole sold the real estate to Bobby and Carmen Robinson for $875,000.00, but failed to pay Atkins any commission.

On November 14, 1997, Atkins filed a complaint against L.L. Cole for breach of contract. Attached to appellant's complaint was a copy of the listing contract, which provides in pertinent part:

> 1. RIGHT TO SELL: In consideration of the services of Atkins Real Estate, hereinafter called "Agent" in selling or exchanging the property described herein, L. L. COLE & SON, INC., Mrs. Vaughn Mathis, Secretary and Manager being the sole owners of the property, hereinafter called "Owners" agrees that the Agent shall have the exclusive right to sell said property.
>
> . . . .
>
> 3. SALES PRICE: The gross sale price shall be $1,250,00.00 or such lesser price or terms as owner may accept.
>
> . . . .
>
> 7. AGENT'S FEE: If the property be sold or otherwise disposed of by agent or any other person, including Owners, during the listing period, Owners agree to pay Agent a professional fee of 10% of the gross amount of the sale or value of the property

exchanged, for professional services. If price is reduced, [commission] will be reduced or renegotiated but not below 6%.

In its complaint, Atkins prayed for $61,250.00 in damages, which is the equivalent of a seven-percent commission on the sale price. Atkins further requested prejudgment interest, costs, and attorney's fees.

In an amended answer to the complaint, L.L. Cole asserted that, because Secretary Vaughn Mathis acted outside the scope of her employment when signing the contract, the contract does not bind the corporation. L.L. Cole further defended on the ground that Atkins did nothing to procure the sale, citing *Farm Credit Bank of St. Louis v. Miller*, 316 Ark. 388, 872 S.W.2d 376 (1994). Finally, L.L. Cole asserted that Bobby Robinson was to be excluded from the contract such that a sale of the property to him would result in no commission, but that the omission of this exclusion from the written contract was the result of mutual mistake or fraud on the part of Atkins.

Both parties moved for summary judgment, and after a hearing on the motions the trial court entered summary judgment in favor of L.L. Cole. In its order, the trial court ruled that because it was undisputed that Atkins did not procure the purchaser of the property, Atkins is precluded by the "procuring cause doctrine" from claiming any commission from L.L. Cole. Atkins now appeals, arguing that the trial court erred in entering summary judgment because the "procuring cause doctrine" does not apply to this case.

The law is well settled that summary judgment is to be granted by a trial court only when it is clear that there are no genuine issues of material fact to be litigated, and the moving party is entitled to judgment as a matter of law. *Bond v. Lavaca Sch. Dist.*, 347 Ark. 300, 64 S.W.3d 249 (2001). We hold that L.L. Cole was not entitled to judgment as a matter of law, even though it is not disputed that Atkins failed to procure the buyer of the real estate, because of the provisions of the contract. Therefore, we reverse the trial court's order granting summary judgment.

■ In *Farm Credit Bank of St. Louis v. Miller, supra*, cited by both parties in their briefs, our supreme court held that the "procuring cause doctrine" can be used affirmatively to infer a contract between the broker and the principal by allowing the broker to show that his part of the contract was performed and the principal reaped a benefit, or defensively to prevent broker fraud. However, while the doctrine was applied in that case to determine that the real estate broker procured the cause of the sale and was entitled to a commission, the contract in that case was a nonexclusive contract, under which the broker was to receive a commission only if the property was sold to a prospect the broker procured.

As Atkins asserts in his argument, the contract at issue in this case is unlike that in *Farm Credit Bank of St. Louis v. Miller, supra*, because it is an exclusive right-to-sell contract. The contract specifically provides that if the property is sold by any person, including the owners, during the listing period, the owners agree to pay a commission. Because the owner, L.L. Cole, sold the property, Atkins was entitled to a commission by the specific terms of the parties' agreement.

■ The rule regarding exclusive real estate contracts was announced in *Halbert v. Block-Meeks Realty Co.*, 227 Ark. 246, 297 S.W.2d 924 (1957), where the supreme court held that during the period of an exclusive-sale contract, the principal can sell the property to no one without becoming liable to the real estate broker for the commission specified. In that case, the owners sold the property to a third party and denied owing any commission, despite language in the contract providing that they agreed to pay five percent should the property be sold during the listing period "no matter by whom or in what manner." In affirming the trial court's verdict awarding the five-percent commission, the supreme court stated:

> Under this contract we hold that appellee had an *exclusive* listing of the Myrtle Lane property, and when it was shown that the sale of this property was made by the Halberts to the Bossons within the listing time, it made no difference to whom or in what manner the Halberts sold to the Bossons, they could not defeat appel-

lee's commission, even though the Halberts sold to a stranger to appellee. It was not necessary under the plain wording of the contract for appellee to show that the sale was made on information given or received or obtained through appellee's efforts, or that appellee had found a buyer, ready, willing and able to buy, for the contract contained no such provisions. In other words, during the listing period, appellants could not sell their property to anyone, without becoming liable to appellee for the commission specified in the contract.

*Halbert v. Blocks-Meeks Realty Co.*, 227 Ark. at 248-49, 297 S.W.2d at 925-26 (emphasis in original).

In the instant case the contract between the parties is an exclusive-sale contract, and under such circumstances L.L. Cole could not sell its property without being liable to Atkins.[1] *See Halbert v. Blocks-Meeks Realty Co, supra. See also Hardwick v. Marsh*, 96 Ark. 23, 130 S.W. 524 (1910); *Blumenthal v. Bridges*, 91 Ark. 212, 120 S.W. 974 (1909). Therefore, we hold that the trial court erred in entering summary judgment for L.L. Cole on the ground that Atkins failed to procure the purchaser.

Reversed and remanded for further proceedings.

STROUD, C.J., and HART, J., agree.

---

[1] We recognize that there may be circumstances where an owner reserves a right to sell property under an exclusive-listing agreement, as opposed to an exclusive-sale contract. *See Porter v. Deeter,* 255 Ark. 1057, 505 S.W.2d 18 (1964). However, the contract in this case was an exclusive-sale contract and explicitly provided otherwise.